588 S.E.2d 125

**Marty K. AVANT, Claimant,**

**v.**

**WILLOWGLEN ACADEMY, Employer,**

**and**

**United Heartland, Respondent,**

**and**

**Travelers Property Casualty Co., Appellant.**

No. 3676.

Court of Appeals of South Carolina.

Heard April 8, 2003.

Decided Sept. 15, 2003.

Rehearing Denied Nov. 20, 2003.

182

Johnnie W. Baxley, III, of Charleston, for Appellant.

Roy A. Howell, III and Kristen L. Barr, both of Mt. Pleasant, for Respondent.

184

CONNOR, J.:

Travelers Property Casualty Company (Travelers) filed a motion with the Workers' Compensation Commission seeking an order identifying the proper carrier for Marty Avant's claim. The single commissioner found United Heartland (United) was the proper carrier. The full commission reversed and found both carriers equally liable for the claim. The circuit court reversed in part and ruled Travelers was responsible for Avant's claim. We reverse.

## FACTS/PROCEDURAL HISTORY

Travelers began insuring Willowglen Academy (Willowglen), a subsidiary of a Wisconsin corporation, on August 15, 1994, under an assigned risk policy administered through the National Council on Compensation Insurance (NCCI). Travelers renewed the policy in 1995 and 1996. On June 19, 1997, Travelers issued a quotation to renew the assigned risk policy with the effective dates of August 24, 1997, through August 24, 1998. Travelers received partial payment from Willowglen for the premium on July 3, 1997, and received the balance on August 13, 1997. On August 29, 1997, Travelers issued the renewal policy with the effective dates of August 24, 1997 through August 24, 1998.

On or about July 7, 1997, Willowglen's parent corporation renewed its voluntary policy for its Wisconsin holdings with United. Subsequently, Willowglen's insurance agent, Stan Strelka, evaluated whether to add Willowglen's South Carolina operations to the United policy. Willowglen and Strelka ultimately decided to add South Carolina to the policy and United issued an endorsement to this effect on either August 27 or 29, 1997. The endorsement stated the effective dates of the United policy were July 1, 1997 through July 1, 1998. The necessary notification of this coverage and endorsement was not received by NCCI until December 12, 1997. *See* 25A S.C.Code Ann. Regs. 67–406(A), (B) (Supp.2002) (stating the insurance carrier shall file a report of coverage of workers' compensation insurance and NCCI is the authorized agent for filing such reports); 25A S.C.Code Ann. Regs. 67–405(B)(1) (1990) (stating insurance carrier shall file report of coverage as provided in Reg. 67–406). Neither Willowglen nor Strelka

notified Travelers of the new voluntary policy. The same insurance agency procured both the assigned risk policy with Travelers and the voluntary policy with United.

On September 6, 1997, Marty Avant, an employee of Willowglen, sustained an injury arising out of and in the course of his employment. Willowglen notified Travelers of the claim. Travelers accepted the claim and began providing benefits. At the time of Avant's accident, neither Travelers nor United knew of the dual coverage.

Travelers learned of the dual coverage on January 5, 1998. United had also learned of Avant's claim and the dual coverage in late December 1997 or early January 1998 while conducting a claims review. United's Vice President of Loss Control, Paul Hindtgen, then suggested changing the effective date of United's policy to October 1, 1997. Stan Strelka also stated that in his discussions with Willowglen and United's underwriter in late January 1998, it was mutually decided that it was "logical" to terminate the Travelers policy and begin the voluntary policy on October 1, 1997, given United had not received any claims from Willowglen prior to this date.

Travelers contacted Willowglen by phone on January 15, 1998. Willowglen indicated its desire to cancel the Travelers policy. On January 29, 1997, Willowglen sent a letter to Travelers requesting that its assigned risk policy be cancelled as of October 1, 1997. On February 12, 1998, Travelers requested from Willowglen a policy release and a copy of the declaration page of the replacement policy and advised Willowglen it could not backdate the cancellation until verifying other coverage. Travelers also issued a notice of intent to cancel its policy with an effective date of March 19, 1998. This date allowed for time to give the required notice to NCCI and the Workers' Compensation Commission. *See* 25A S.C.Code Ann. Regs. 67–405(E)(1) (1990) (stating a workers' compensation insurance carrier shall file a notice of termination as provided in Reg. 67–406); 25A S.C.Code Ann. Regs. 67–406(F)(2) (Supp.2002) (stating an insurance termination shall not be effective until after thirty days from the date of receipt by NCCI).

On March 9, 1998, Travelers received its first notice of the voluntary nature of the coverage with United. On this date,

Travelers received the policy release from Willowglen requesting an effective date of cancellation of October 1, 1997. Travelers also received a copy of the declaration page from United showing a voluntary workers' compensation policy in effect from July 1, 1997 through July 1, 1998. On April 2, 1998, Travelers issued a cancellation notice with an effective date of March 19, 1998. Subsequently, on June 4, 1998, Travelers decided to cancel its policy effective on the date of the voluntary policy, as opposed to cancelling the policy on March 19, 1998. Travelers performed an audit and refunded to Willowglen all premiums paid for the assigned risk coverage after July 1, 1997.

On May 7, 1999, Travelers filed a motion requesting the Workers' Compensation Commission to identify the proper carrier for Avant's claim. In its motion, Travelers asserted a provision of the South Carolina Workers' Compensation Insurance Plan operated to cancel its assigned risk policy as a matter of law as soon as Willowglen secured voluntary coverage through United. The single commissioner found United was the proper carrier. United appealed. The full commission reversed and determined both insurers intended to provide coverage on the date of Avant's accident and were equally liable for benefits. Both parties appealed. The circuit court reversed in part and found Travelers was responsible for Avant's claim because there was dual coverage on the date of the accident and Travelers' policy had the later effective date. Travelers appeals.

## STANDARD OF REVIEW

■ The Administrative Procedures Act establishes the standard of review for decisions by the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). "The appellate court's review is limited to deciding whether the commission's decision is unsupported by substantial evidence or is controlled by some error of law." *Hendricks v. Pickens County*, 335 S.C. 405, 411, 517 S.E.2d 698, 701 (Ct.App.1999); *see Roper Hosp. v. Clemons*, 326 S.C. 534, 536, 484 S.E.2d 598, 599 (Ct.App.1997) ("On appeal from the Workers' Compensation Commission, this court may reverse where the decision is affected by an error of law."). The commission's decision must be affirmed unless it is clearly

erroneous in view of the substantial evidence on the whole record. *Nettles v. Spartanburg School Dist. # 7*, 341 S.C. 580, 586, 535 S.E.2d 146, 149 (Ct.App.2000).

## LAW/ANALYSIS

Travelers argues the circuit court erred in finding Travelers was the proper carrier for Avant's claim.

### A.

Travelers first contends the circuit court erred in refusing to apply the South Carolina Workers' Compensation Insurance Plan (WCIP) administered by NCCI. The circuit court found the WCIP does not supersede the provisions of the Workers' Compensation Act and the regulations promulgated thereunder and does not govern the determination of coverage under the facts of this case. We hold the WCIP does apply to the facts of this case.

The South Carolina General Assembly has granted insurers the right to enter into assigned risk agreements in order to equitably apportion among themselves insurance for applicants who are in good faith entitled to, but are unable to procure, voluntary insurance. S.C.Code Ann. § 38–73–540(A)(1) (2002). Section 38–73–540 further provides that "any mechanism designed to implement such agreement ... must be submitted in writing to the [Director of the Department of Insurance] for approval prior to use...." *Id.*

The WCIP, as administered by NCCI, is the only "mechanism" in the state for implementing the assigned risk pool and has been approved by the Director of the Department of Insurance for use in this State. The Director "must follow the general policies and broad objectives enacted by the General Assembly regarding the operation of the insurance industry in this State." S.C.Code Ann. § 38–3–60 (2002). The Director's duties include "supervis[ing] and regulat[ing] the rates and service of every insurer in this State and fix[ing] just and reasonable standards, classifications, regulations, **practices**, and measurements of service to be observed and followed by every insurer doing business in this State." S.C.Code Ann. § 38–3–110(1) (2002) (emphasis added). While we recognize the General Assembly has not specifically enacted the WCIP,

the Director of the Department of Insurance has followed the broad mandate of the General Assembly and has properly acted upon its intent in section 38–73–540 to create an assigned risk plan by approving the WCIP for its use in the assigned risk practice in this State.

The WCIP provides the framework for the assigned risk pool and includes numerous provisions governing assigned risk practice. Without the WCIP there would be nothing guiding assigned risk practice and its procedure, such as an employer's application process for assigned risk coverage or the assignment of an insurer to a risk. For example, the Workers' Compensation Commission's compliance investigator, Joel Scott, testified that the only way an employer can obtain an assigned risk policy is by applying through NCCI and the WCIP and certifying that the employer is unable to obtain voluntary coverage. Moreover, section 38–73–540 obligates assigned carriers to report their experience on business written under the assigned risk plan to the "plan administrator." S.C.Code Ann. § 38–73–540(C) (2002). NCCI is designated in the WCIP as the "plan administrator" and undertakes to secure the information reported by assigned carriers. For these reasons, the WCIP applies to the facts of this case and the circuit court erred in not applying it.

The specific provision of the WCIP at issue here provides that:

any insurer that wishes to insure an employer as voluntary business may do so at any time. If such insurer is not the assigned carrier, the assigned carrier shall cancel its policy pro rata and the assignment shall automatically terminate as of the effective date of the voluntary insurer's policy.

The circuit court refused to apply the WCIP provision and instead relied on Regulation 67–409 in finding Travelers solely responsible for Avant's claim. Regulation 67–409 states, in pertinent part,

When duplicate or dual coverage exists by reason of two different insurance carriers issuing two policies to the same employer securing the same liability, the Commission shall presume the policy with the later effective date is in force

and the earlier policy terminated on the effective date of the later policy.

25A S.C.Code Ann. Regs. 67–409(A) (1990).

■ We agree with the circuit court that the WCIP does not supersede the provisions and regulations of the Workers' Compensation Act (Act). Instead however, the WCIP should be read in conjunction with the Act and its regulations and be accorded effect under the facts of this case given the WCIP addresses matters where the Act is silent. The WCIP addresses the specific situation of the cancellation of an assigned risk policy upon the effective date of voluntary coverage, whereas Regulation 67–409 generally addresses duplicate policies issued by, rather than assigned to, multiple carriers. *See Adoptive Parents v. Biological Parents*, 315 S.C. 535, 543, 446 S.E.2d 404, 409 (1994) ("Statutes in apparent conflict should be construed, if possible, to allow both to stand and give effect to each."); *see also Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995) ("The general rule of statutory construction is that a specific statute prevails over a more general one.").

■ Regulation 67–409 applies only where two carriers have issued policies and dual voluntary coverage is in effect at the time of the claim. In this case, however, there was not dual coverage. Pursuant to the WCIP, the Travelers' assigned risk coverage terminated on July 1, 1997, the effective date of the voluntary policy. Through the application of the WCIP, United became the only carrier with coverage on the date of Avant's claim, and thus United is responsible for this claim.[1] In addition, the application of Regulation 67–409 would create in this case an unreasonable and unintended presumption that United's policy terminated on August 24, 1997. Neither Willowglen nor United intended for United's policy to be terminated.

Paul Hindtgen testified he would never have suggested changing the effective date of United's voluntary policy to October 1, 1997, had he known the Travelers policy would terminate as a matter of law on July 1, 1997, pursuant to the

---

1. Moreover, as a policy matter, to deny the effect of the WCIP in this case would encourage voluntary insurers to receive premiums and set effective dates prior to the effective date of an assigned risk policy.

WCIP.[2] Moreover, according to Stan Strelka, the agent who procured both policies, his intention was to notify Willowglen and the assigned carrier of the July 1, 1997 change in insurers so that the assigned policy would not be renewed and claims would be sent to United. Strelka stated it was inexplicable why Willowglen "continued to turn claims in to The Travelers rather than turning them in to the proper carrier."

**B.**

■ Travelers argues the circuit court erred in failing to find it performed all statutory and regulatory requirements with regard to cancelling its assigned risk policy. The circuit court stated Travelers did not file a cancellation notice thirty days before Avant's accident. Thus, the circuit court found the policy issued by Travelers in August 1997 would have been in effect at the time of Avant's accident and South Carolina law does not allow for retroactive cancellation of an assigned risk policy based on the facts of this case.

The parties involved in this action were unaware of the duplicate policies until late December 1997 or early January 1998. Travelers did not learn Willowglen's policy with United had been obtained on the voluntary market until after receiving the policy release from Willowglen on March 9, 1998. Initially, Travelers filed a notice of intent to cancel its policy on February 12, 1998, but the effective date of the cancellation was denoted as March 19, 1998, to allow for the thirty-day cancellation period and five additional days for mailing the notice to NCCI. *See* 25A S.C.Code Ann. Regs. 67–405(E)(1) (1990) (stating a workers' compensation insurance carrier shall file a notice of termination as provided in Reg. 67–406); 25A S.C.Code Ann. Regs. 67–406(F)(2) (Supp.2002) (stating an insurance termination shall not be effective until after thirty days from the date of receipt by NCCI).

However, once Travelers became aware of the voluntary coverage, it then completed the pro rata cancellation pursuant

---

**2.** It should also be noted that the record does not definitively show that United made the proper filing with NCCI changing the effective date of its voluntary policy, nor did United ever cancel its policy. *See* 25A S.C.Code Ann. Regs. 67–406(D) (Supp.2002) (stating the insurance carrier shall file with NCCI a report of coverage and endorsements within thirty days of the policy's effective date). Thus, the effective date of United's policy remains July 1, 1997.

to the WCIP back to July 1, 1997, the date the voluntary coverage went into effect. Travelers cancelled its policy in accordance with the WCIP and refunded all of the premiums earned during the time of dual coverage. The WCIP allows for this retroactive cancellation. Thus, the trial court erred as a matter of law in finding Travelers did not properly cancel its assigned risk policy and that retroactive cancellation was not allowed based upon the facts of this case.

## C.

■ Travelers argues the circuit court erred in finding the parties mutually agreed Travelers would be responsible for claims prior to October 1, 1997, and that United would only be responsible for claims after that date. The substantial evidence in the record does not support this finding of fact by the circuit court. *See Baggott v. Southern Music, Inc.,* 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998) ("Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action.").

Hindtgen testified he suggested changing the effective date of United's policy to October 1, 1997. Hindtgen thought this would be the "logical" thing to do since Travelers was already handling claims made prior to this date. Upon learning of the two policies in effect, United informed Stan Strelka that it had begun to receive claims from Willowglen after October 1, 1997. After Strelka discussed the situation with United's underwriter and Willowglen, they mutually decided that it was "logical" to terminate the Travelers policy and begin the voluntary policy on October 1, 1997, given United had not received any claims from Willowglen prior to this date.

The record is clear the only reason Travelers handled claims prior to October 1, 1997, is because Willowglen had mistakenly sent the claims to Travelers [3] and Travelers had not been notified of the voluntary policy issued by United. There is no evidence Travelers *agreed* to an arrangement where it would

---

3. Strelka stated Willowglen's intent, through his agency, was to place its workers' compensation insurance in the voluntary market and allow the Travelers policy to lapse. However, Willowglen mistakenly paid premiums to Travelers upon receiving the renewal notice.

handle claims made prior to October 1, 1997. Hindtgen never spoke with anyone at Travelers about this arrangement and admitted no one from Travelers had done anything to lead him to believe Travelers agreed to handle claims made prior to October 1, 1997.

Moreover, Travelers sent a letter to Willowglen on June 5, 1998, which stated that the assigned risk coverage terminated on the effective date of the voluntary insurance. Pursuant to this, Travelers cancelled Willowglen's policy back to July 1, 1997. This is a clear statement from Travelers that it never consented to providing coverage for claims originating before October 1, 1997.

## D.

■ Travelers argues the circuit court erred in failing to find that it was the negligence and inaction of United which caused dual policies and the resulting dispute in this matter.

We need not address this issue because the operation of the WCIP precluded dual policies on the date of Avant's accident. Therefore, any negligence or inaction on the part of United in making the proper filings is irrelevant to this coverage dispute.[4]

## CONCLUSION

Accordingly, based on the foregoing reasons, the decision of the circuit court is **REVERSED**. United is the proper carrier and is responsible for Avant's claim.

**REVERSED.**

HUFF, J., concurs and ANDERSON, J., dissents in a separate opinion.

---

4. In any event, in the absence of the WCIP, any negligence or inaction by United would not have prevented dual policies on the date of Avant's accident. United did not decide until, at the earliest, August 27, 1997, to add Willowglen's South Carolina operations to its coverage. At this time the Travelers policy was already in effect. Even if United had given Travelers notice of its policy on August 27, 1997, and Travelers had immediately started cancellation of its policy, the cancellation would not have taken effect until thirty days later. *See* S.C.Code Ann. Regs. 67–406(F)(2) (Supp.2002) (stating an insurance cancellation shall not be effective until after thirty days from the date of receipt by NCCI of the cancellation notice).

ANDERSON, J. (dissenting):

I respectfully dissent. I disagree with the reasoning and analysis of the majority. The holding of the majority misconstrues and misapplies the law extant in regard to the identity of a proper carrier for a Workers' Compensation claim. I **VOTE** to **AFFIRM** the order of the circuit court judge.

## *LAW/ANALYSIS*

Travelers Property Casualty Company (Travelers) contends the circuit court erred in finding Travelers was the proper carrier in the Workers' Compensation claim. Travelers conceded, before the Appellate Panel, that it had an assigned risk policy with Willowglen Academy (Willowglen) with the effective dates of August 24, 1997 through August 24, 1998. However, Travelers claims that, pursuant to the National Council on Compensation Insurance (NCCI) rules, its policy covering Willowglen was canceled automatically when Willowglen secured a voluntary policy with United Heartland, which had an effective date of July 1, 1997. I disagree.

## I.  APPLICABILITY OF SOUTH CAROLINA WORKERS' COMPENSATION ACT

Initially, Travelers maintains the court erred in finding the South Carolina Workers' Compensation Commission's regulations are inconsistent with and supersede the rules of the NCCI and in refusing to apply the NCCI rules. This assertion is without merit.

The South Carolina Workers' Compensation Act (the Act) governs coverage issues in Workers' Compensation cases. South Carolina Code Ann. § 42–5–60 (1985) provides:

> Every policy for the insurance of the compensation provided in this Title or against liability therefor shall be deemed to be made subject to provisions of this Title. No corporation, association or organization shall enter into any such policy of insurance unless its form shall have been approved by the Chief Insurance Commissioner of South Carolina.

Neither § 42–5–60 nor another provision of the South Carolina Code suggests that Workers' Compensation policies are sub-

ject to the rules or regulations of any non-governmental advisory body.

The only mention of NCCI in the law of South Carolina is found in Regulations 67–404, 67–406, and 67–410. Pursuant to Regulation 67–406(A), NCCI is the Workers' Compensation Commission's "authorized agent" for filing a report of Workers' Compensation coverage and notice of termination. 25A S.C.Code Ann. Reg. 67–406(A) (Supp.2002). In its capacity as filing agent, NCCI requires that certain forms be used by insurance carriers. Regulations 67–404 and 67–410 merely mention NCCI. *See* 25A S.C.Code Ann. Reg. 67–404, –410 (1990). NCCI has no additional power or authority by virtue of these regulations. Regulations 67–404, 67–406, and 67–410 do not bestow NCCI with any power or authority to promulgate binding regulations in South Carolina.

While NCCI has compiled its own "Basic Manual" for Workers' Compensation and Employers Liability insurance and a "South Carolina Workers' Compensation Insurance Plan," neither of these documents, nor any of the rules contained therein, have been formally adopted as regulations in accordance with the Administrative Procedures Act (APA). According to the APA, NCCI, by definition, is not authorized to promulgate regulations and any guidance it may provide the Commission "does not have the force or effect of law." Section 1–23–10 states in pertinent part:

(1) "Agency" or "State agency" means each state board, commission, department, executive department or officer . . . authorized by law to make regulations or to determine contested cases;

. . . .

(4) "Regulation" means each agency statement of general public applicability that implements or prescribes law or policy or practice requirements of any agency. **Policy or guidance issued by an agency other than in a regulation does not have the force or effect of law.**

S.C.Code Ann. § 1–23–10(1), (4) (Supp.2002) (emphasis added); *cf.* S.C.Code Ann. § 1–23–40 (1986) (requiring that "[a]ll regulations promulgated or proposed to be promulgated by state agencies which have general public applicability and legal effect" must "be filed with the Legislative Council and

published in the State Register."); S.C.Code Ann. § 1–23–120 (Supp.2002) (mandating that "[a]ll regulations except those specifically exempted ... must be submitted to the General Assembly for review"). The NCCI has no power or authority to promulgate regulations that have the force or effect of law. In fact, not even NCCI claims this authority. Instead, it is a self-described "rating organization or **advisory organization** licensed in this state to make and file rates, rating values, classifications, and rating plans for workers' compensation insurance." *NCCI Basic Manual*, South Carolina Workers' Compensation Insurance Plan, effective January 1, 1999 (emphasis added).

Travelers asserts the NCCI's rules should control the instant case. Travelers cites a paragraph in an "Assigned Risk Supplement" issued on January 1, 1998, which reads: "Any employer having voluntary coverage or an offer thereof in a state is ineligible for Plan coverage. The assigned risk coverage terminates at the effective date of the voluntary insurance." Travelers fails to reconcile the above statements with the NCCI South Carolina Workers' Compensation Plan, Section III. Paragraph 6 of that section provides in pertinent part:

[A]ny insurer that wishes to insure an employer as voluntary business may do so at any time. If such insurer is not the assigned carrier, the assigned carrier shall cancel its policy pro rata and the **assignment** shall automatically terminate as of the effective date of the voluntary insurer's policy. (Emphasis added).

Paragraph 2 of Section III of the Plan declares in relevant part:

If, after the issuance of a policy, the assigned carrier determines that an employer is not entitled to insurance, ... the assigned carrier **shall initiate cancellation** and inform the Plan Administrator and appropriate state organization of the reason for such cancellation. (Emphasis added).

Therefore, despite Travelers' contentions, the NCCI advisory provisions do not militate against a finding that Travelers is the proper carrier with coverage in this case.

When an insured with an assigned risk policy obtains Workers' Compensation insurance on the voluntary market, Section III, Paragraph 6 of NCCI's South Carolina Workers' Compensation Insurance Plan provides for two separate and distinct results: (1) termination of the *assignment agreement* between the assigned carrier and the assigned risk pool; and (2) cancellation of the insurance policy. Essentially, NCCI advises that, before the assigned risk policy is "cancelled," the assigned carrier must be relieved of its duty to insure the assigned risk by the assigned risk pool with which it is associated. In his treatise on Workers' Compensation law, Professor Larson explained that if the assignment agreement is not terminated *before* the assigned carrier cancels the assigned risk policy, the cancellation of the policy would constitute a breach of the carrier's assigned risk agreement. *See* 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 150.05[3] (2000). The NCCI has suggested that the assigned risk carriers' obligations under the assigned risk agreement should automatically terminate when an insured obtains Workers' Compensation insurance on the voluntary market. Yet, as indicated in Section III, Paragraph 2 of NCCI's South Carolina Workers' Compensation Insurance Plan, the assigned risk policy itself must be properly cancelled in accordance with the procedures outlined in the Workers' Compensation Act and corresponding regulations.

The proper procedures for canceling a Workers' Compensation insurance policy in South Carolina are found in Regulations 67–405 and 67–406. These regulations require that when an insurer wishes to cancel a policy, the insurer shall immediately notify the Workers' Compensation Commission by filing a Policy Cancellation Notice, Form WC–89–06–09–A, with the NCCI. The Workers' Compensation insurance policy is deemed continuous until the cancellation notice is duly filed and, even then, cancellation is not effective until after thirty days from the date NCCI receives the Form WC–89–06–09–A. *See* 25A S.C.Code Ann. Reg. 67–406(E)–(F) (Supp.2002). No state law or regulation provides for automatic cancellation of a Workers' Compensation policy.

Even considering NCCI's Insurance Plan and Assigned Risk Supplement, Travelers is the proper carrier. No advisory opinion of the NCCI has the force or effect of a law or

regulation in South Carolina. The NCCI rules do not supersede the South Carolina Workers' Compensation Act or the regulations promulgated thereunder. NCCI is subjugated to the law in South Carolina. The NCCI rules relied on by Travelers do not have the force or effect of law in South Carolina.

The majority opinion is infected with expository error. Because the NCCI rules have been approved by the Chief Insurance Commissioner, the majority elevates the NCCI rules to co-equal status with the regulations approved by the South Carolina General Assembly in the field of Workers' Compensation. The imprimatur of the Chief Insurance Commissioner is nonefficacious when juxtaposed to approval of a regulation by the South Carolina General Assembly. Is there a factual or legalistic harmonious nexus *inter sese* the NCCI rules and legislatively approved regulations? In fact, it is not a *vel non* because the NCCI rules inevitably occupy an inferior status.

The applicable statutory and regulatory provisions of the South Carolina Workers' Compensation Act govern the determination of coverage in this case.

## II. IDENTITY OF PROPER CARRIER

### A. Travelers had not Canceled Policy at Time of Accident

Travelers issued an assigned risk policy to Willowglen with the effective dates of August 24, 1997 through August 24, 1998. Travelers accepted the September 6, 1997 claim of Marty Avant and began paying benefits under the Workers' Compensation Act. Substantial evidence in the record indicates that Travelers had not initiated cancellation of the assigned risk policy covering Willowglen at the time of the September 6, 1997 accident.

Only Travelers' obligations under the assignment agreement would have automatically terminated when Willowglen obtained Workers' Compensation insurance on the voluntary market. This did not occur on July 1, 1997 as found by the Commissioner. When Willowglen renewed its voluntary cov-

erage with United Heartland on July 1, 1997, the only holdings covered under the policy were its Wisconsin holdings.

Amy Gilland testified that Travelers issued a renewal quotation on June 19, 1997. On July 3, 1997, Travelers received a partial renewal payment from Willowglen in the amount of $466.03. The quoted premium was $46,603.00. According to Gilland, the partial payment was intended to be a full payment, but the check was mistakenly written for the wrong amount. On August 13, 1997, Willowglen issued a second check for the balance of the full premium to renew the policy insuring Willowglen. Subsequently, Travelers issued the renewal policy with effective dates of August 24, 1997 to August 24, 1998. The timing is significant. Willowglen did not decide to add South Carolina as an endorsement to its United Heartland policy until after Willowglen had already renewed the assigned risk policy with Travelers and fully paid the premium. According to Paul Hindtgen at United Heartland, notice of the new endorsement was sent to the NCCI on or about August 27, 1997. The effective date of this endorsement was July 1, 1997. Travelers was not notified of the endorsement and did not cancel the assigned risk policy covering Willowglen.

To cancel the policy with Willowglen, Travelers was required to follow the explicit cancellation procedure set out in Regulations 67–405 and 67–406. According to Regulation 67–405(E), "[i]f the employer fails to renew its insurance, or the insurer cancels the policy, the employer's insurer shall immediately notify the Commission that it no longer insures the employer by filing a notice of termination with the Commission." 25A S.C.Code Ann. Reg. 67–405(E) (1990). Regulation 67–406 provides in pertinent part:

> B. The insurance carrier shall file a ... notice of termination directly with the NCCI. The date of receipt by the NCCI is deemed the date of filing with the Commission.
>
> . . . .
>
> E. Workers' compensation insurance is deemed continuous until notice of termination is filed according to R. 67–405 and as provided in F below.

F.  To cancel workers' compensation insurance coverage, ... the insurance carrier shall file with the NCCI an NCCI Form WC 89 06 09 A.

. . . .

(2)  Insurance expiration, termination or cancellation shall not be effective until after thirty days from the date of receipt by NCCI of the NCCI Form WC 89 06 09 A.

25A S.C.Code Ann. Reg. 67–406 (Supp.2002). NCCI acknowledges that cancellation of a Workers' Compensation insurance policy is regulated by state law. *See NCCI Basic Manual,* Rule X(A).

Travelers did not file a notice of cancellation form with the NCCI at any time prior to the September 6, 1997 accident. Travelers became aware of the existence of voluntary coverage as early as January 5, 1998. The testimony from Amy Gilland and Joel Scott shows that notice of cancellation was received by the Commission on February 13, 1998, with an effective date of cancellation of March 19, 1998. This unequivocal notice that Travelers' policy was canceled effective March 19, 1998 is contained in the record. On April 2, 1998, Travelers sent a second notice of cancellation to Willowglen confirming the policy was cancelled effective March 19, 1998. Travelers did not, at any time prior to May 7, 1999, notify Willowglen or United Heartland that it intended to contest coverage for the Avant claim, even though Travelers was aware as early as January 5, 1998, that there was duplicate coverage. While Travelers later attempted to change the effective cancellation date to August 24, 1997, by sending a subsequent notice of cancellation on June 5, 1998, the second notice is null and void because the earlier notice had already cancelled the policy. Travelers was attempting to cancel a policy that had been canceled three months earlier. An insurance policy cannot be cancelled twice. Moreover, Regulation 67–406(F)(2) states that cancellation "shall not be effective" until thirty days after the proper notice of cancellation form is filed with the NCCI.

Additionally, Travelers issued a *new* policy to Willowglen after Willowglen had been insured by United Heartland on the voluntary market. Therefore, even if Travelers had cancelled the policy in effect at the time Willowglen obtained a volun-

tary policy in July 1997, the new Travelers policy issued in August 1997 would have been in effect on September 6, 1997.

The Travelers policy had not been canceled and was in effect at the time of Avant's September 6, 1997 accident. The Travelers policy remained in effect until March 19, 1998.

### B. Travelers Policy had Later Effective Date

When Avant was injured on September 6, 1997, Willowglen was seemingly covered by two insurance policies. The Travelers policy became effective on August 24, 1997 and remained in effect until March 19, 1998. The record reveals United Heartland issued a policy covering Willowglen, with an effective date of July 1, 1997. In such cases, Regulation 67–409 determines which carrier is liable for benefits. *See* 25A S.C.Code Ann. Reg. 67–409 (1990). Pursuant to Regulation 67–409(A), "[w]hen duplicate or dual coverage exists by reason of two different insurance carriers issuing two policies to the same employer securing the same liability, the Commission **shall presume the policy with the later effective date is in force** and the earlier policy terminated on the effective date of the later policy." (Emphasis added). This mandatory language creates an irrebuttable presumption that the Travelers policy with the effective date of August 24, 1997 was in force on September 6, 1997, not the United Heartland policy.

This presumption is supported by the fact that Travelers accepted Avant's claim for the September 6, 1997 accident and paid benefits in excess of $40,000, even after discovering the dual coverage issue in early January 1998. Travelers did not pursue legal action until May 7, 1999, when Travelers filed a motion requesting the Workers' Compensation Commission to identify the proper carrier for the Avant claim. Willowglen continued to pay and Travelers continued to accept premiums after issuing the August 1997–98 renewal policy.

Because the renewal policy issued by Travelers effective August 24, 1997 has a later effective date than the United Heartland policy issued July 1, 1997, the law presumes the United Heartland policy was terminated after August 24, 1997. Therefore, by virtue of Regulation 67–409, only the Travelers policy was in effect on September 6, 1997. The Act and the

regulations clearly presume the Travelers policy covers Avant's accident on September 6, 1997.

### C. Retroactive Cancellation of Workers' Compensation not Permitted Under these Facts

Travelers argues the "circuit court erred in finding that retroactive cancellation of a policy is not permissible under any circumstances." This is a misstatement of the judge's order. The judge held: "South Carolina law does not permit retroactive cancellation of workers' compensation insurance except in one limited circumstance: where there are dual policies with the *same* effective date." (emphasis in judge's order). This is a correct statement of law. The only provision for retroactive cancellation of a Workers' Compensation insurance policy is found at 25A S.C.Code Ann. Reg. 67–409(B) (1990). "When both policies carry the same effective date, one policy may be cancelled by filing a notice of termination retroactive to the date of the policy's inception." 25A S.C.Code Ann. Reg. 67–409(B) (1990).

The general rule is found at 25A S.C.Code Ann. Reg. 67–406(F)(2) (Supp.2002): "Insurance expiration, termination or cancellation shall not be effective until after thirty days from the date of receipt by NCCI of the NCCI Form WC 89 06 09 A." Travelers cites no statute, regulation, or case that would permit Travelers to retroactively cancel a Workers' Compensation insurance policy under any other circumstance.

The Travelers policy and the United Heartland policy at issue do not have the "same effective date." Accordingly, the law does not permit Travelers to cancel its policy retroactively.

Furthermore, public policy dictates that retroactive cancellation of Workers' Compensation insurance be the exception, not the rule. Professor Larson articulated: "In view of the essential role of insurance in the compensation process, and the serious potential effects of noninsurance on both employer and employee, requirements for cancellation of insurance are generally exacting, and are **strictly construed and applied.**" 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 150.03[1] (2000) (emphasis added). Thus, South Carolina's regulations on cancellation should be strictly

construed and applied. These regulations cannot be circumvented by an advisory policy. Cancellation of a Workers' Compensation insurance policy is regulated by state law.

## CONCLUSION

Travelers is the proper carrier with coverage. United Heartland has no liability for benefits in this case under the South Carolina Workers' Compensation Act. I **VOTE** to **AFFIRM** the order of the circuit court judge finding that Travelers is solely responsible for providing coverage of Avant's claim.