610 S.E.2d 488

Celestino RODRIGUEZ, Employee, Claimant,

v.

Hector ROMERO, Employer, and The Insurance Corporation of New York (INSCORP) and Capital City Insurance Company, Carriers, Defendants,

of whom The Insurance Corporation of New York (INSCORP) is the, Appellant,

and

Capital City Insurance Company is the, Respondent.

No. 25948.

Supreme Court of South Carolina.

Heard Sept. 21, 2004.
Decided Feb. 28, 2005.
Rehearing Denied April 7, 2005.

Stephen L. Brown and Amy E. Mathisen, both of Young Clement Rivers & Tisdale, of Charleston, for Appellant.

Stanford E. Lacy and Christian Stegmaier, both of Collins & Lacy, of Columbia, for Respondent.

Justice WALLER:

This is a workers compensation matter. At issue is which of two insurance carriers, The Insurance Corporation of New

York (INSCORP) or Capital City Insurance Company (Capital), is responsible for coverage for injuries sustained by Celestino Rodriguez in a work-related accident on June 27, 2000. The single commissioner held Capital was the responsible insurance carrier; the full commission affirmed. The circuit court reversed and held INSCORP is the responsible carrier. We affirm the circuit court's ruling.

## FACTS

Rodriguez was employed performing construction-type labor for Hector Romero, a subcontractor. On June 27, 2000, while installing a new roof on a large commercial building, Rodriguez slipped and fell through a skylight opening, suffering numerous injuries. It is undisputed that Rodriguez is entitled to workers' compensation coverage. The only question is which carrier is responsible.

Romero initially purchased workers' compensation insurance from INSCORP in January 1999. The policy was cancelled in June 1999 for non-payment. In May 2000, Romero called INSCORP'S managing agent, Risk Control, to ask if his policy could be reinstated. Risk Control referred him to one of its carriers, Tad Roberts. On May 19, 2000, Romero faxed his application to Roberts, who forwarded it to Risk Control. Romero sent a partial premium of $704.00 in June 2000.

Sometime thereafter, Roberts became suspicious Romero was "leasing" his employees.[1] Risk Control investigated and determined it was likely Romero was leasing employees. On or about June 16, 2000, Risk Control advised Roberts that Romero's policy should be cancelled. Roberts relayed this information to Romero and told him to seek coverage through an "assigned risk" plan.[2] However, Romero's policy was not cancelled and, instead, INSCORP issued policy # SC0001204200RCS on June 22, 2000, with an effective date of May 19, 2000. On June 23, 2000, Risk Control sent Romero an invoice for the July premium payment.

---

**1.** Coverage for leased employees was excluded by INSCORP's treaty with its reinsurers.

**2.** Assigned risk insurance agreements are made for the benefit of people who are entitled to insurance but who are unable to procure insurance through ordinary methods. S.C.Code Ann. § 38–73–540 (1976).

Meanwhile, having been advised by Roberts to seek assigned risk coverage, Romero went on June 23, 2000 to Capstone Insurance Services in Greenville and applied for workers' compensation coverage. In accordance with assigned risk rules and procedures, Romero's application was sent to Capital, a designated assigned risk carrier. Romero's application for assigned risk coverage made a number of misstatements and misrepresentations, including the averment that he was a new business and had no prior workers' compensation coverage.[3] Not knowing of Romero's coverage with INSCORP, Capital issued policy # 05–WC–0004280/000, effective June 24, 2000. Three days later, on June 27, 2000, Rodriguez slipped through the roof and was injured.

Capital, still unaware of the INSCORP policy, accepted the claim and began providing benefits. It learned of the INSCORP policy on or about August 15, 2000. On August 16, 2000 Capital tendered Rodriguez' claim to INSCORP; Capital simultaneously filed a cancellation form with the National Council on Compensation Insurance (NCCI) asking its policy be voided on the ground that Romero was ineligible for assigned risk coverage because a) he had voluntary coverage, and b) he had made material misrepresentations in his application for coverage. On August 17, 2000, INSCORP sent a "flat cancellation" notice to Romero.

On September 6, 2000, Capital filed a motion to determine coverage. A hearing was held before the single commissioner, who ruled that because Romero had lied in his representations to obtain the policy, Capital's policy should be rescinded and declared void *ab initio*. Since INSCORP voluntarily issued its policy, the commissioner found it should be deemed the responsible carrier. However, notwithstanding these findings, the single commissioner ruled that because Capital's assigned

---

**3.** INSCORP asserts there is no evidence Romero made any material misrepresentations about his "new business venture of a temporary personnel agency which specialized in insulation installation and related labor." It contends his representations were valid and correct in light of the distinctions between the coverage for which he sought the assigned risk plan (temporary personnel agency doing insulation) and the INSCORP policy (buildings-operation; by contractors—includes window cleaning, painting, maintenance). We disagree; we find substantial evidence supports the unappealed finding of the commission that Romero made material misrepresentations to gain coverage.

risk policy had the most recent effective date, it was the responsible carrier pursuant to the applicable regulation, 25A S.C.Code Ann. Reg. 67–409. The full commission affirmed, with one commissioner dissenting. The circuit court reversed and found INSCORP to be the responsible carrier; it ruled that because Romero had coverage in the voluntary market, he was not eligible for assigned risk coverage such that Capital's coverage was void. The circuit court also ruled the policy was void *ab initio* due to material misrepresentations made by Romero in his application. Accordingly, the circuit court found no dual coverage such that Reg. 67–409 was inapplicable.

## ISSUE

Did the circuit court properly rule that INSCORP was the responsible carrier?

## SCOPE OF REVIEW

Review of a decision of the workers' compensation commission is governed by the Administrative Procedures Act. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Although this Court may not substitute its judgment for that of the full commission as to the weight of the evidence on questions of fact, it may reverse where the decision is affected by an error of law. *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000); S.C.Code Ann. § 1–23–380(A)(6) (Supp.2002). Review is limited to deciding whether the commission's decision is unsupported by substantial evidence or is controlled by some error of law. *Hendricks v. Pickens County,* 335 S.C. 405, 411, 517 S.E.2d 698, 701 (Ct.App.1999).

## DISCUSSION

Central to resolution of this dispute is the interplay between the South Carolina Assigned Risk Plan Operating Rules and Procedures (Procedures) and the applicable regulation, 25A S.C.Code Ann. Reg. 67–409.

Pursuant to S.C.Code Ann. § 38–73–540 (1976), "[a]ssigned risk agreements may be made among insurers with respect to the equitable apportionment among them of insurance which

may be afforded **applicants who are in good faith entitled to, but who are unable to procure, insurance** through ordinary methods." (emphasis supplied). In April 2000,[4] the National Council on Compensation Insurance (NCCI) filed the South Carolina Workers Compensation Assigned Risk Plan (Plan) with the Department of Insurance. Although the Plan has not been enacted by the General Assembly, it has been adopted and is followed by the DOI in implementing the assigned risk pool created by S.C.Code Ann. § 38–73–540. Carriers selected to write assigned risk coverage must accept all applications of "eligible" employees.

Capital is one of only two carriers in South Carolina who issue assigned risk policies under the South Carolina Assigned Risk Plan. The Plan provides for the equitable apportionment of employers who are in good faith entitled to workers compensation insurance but who are unable to procure such assurance in a regular manner.[5] Pursuant to the Plan, good faith is presumed in the absence of clear and convincing evidence to the contrary. One of the requirements of eligibility is that the employer has not made any material misrepresentations in his application.[6] Paragraph 9 of the Plan, governing Cancellation of an assigned risk policy states, in pertinent part, **"any employer having voluntary coverage or an offer thereof in this state is ineligible for SCWCARP Plan coverage. The assigned risk coverage terminates at the effective date of the voluntary insurance."** (emphasis added). Additionally, the Plan has a provision entitled "Cancellation for Voluntary Coverage," which states, in part, "any insurer that wishes to insure an employer

---

4. In 2000, the assigned risk market in South Carolina was privatized by the Department of Insurance (DOI). Unlike the former assigned risk pool system, which spread the risk over all carriers, the new system places the burden on only a few carriers who have requested to handle assigned risk to bear the loss.

5. This is identical to S.C.Code Ann. § 38–73–540.

6. The Plan itself states that an employer is not in good faith entitled to assigned risk insurance if "[t]he employer ... knowingly makes a material misrepresentation on the application by omission or otherwise, including, but not limited to, the following: estimated payroll, offers of workers compensation insurance, nature of business, ... previous insurance history."

as voluntary business may do so at any time. If such insurer is not the contract carrier, the contract carrier shall cancel its policy ... and the coverage shall **automatically terminate as of the effective date of the voluntary insurer's policy.**" Another paragraph of the Plan Procedures, governing the effective date of a policy, states that the **effective date shall be the latest of any of three conditions, one of which is** "the date of expiration of existing coverage."

 Under the Assigned Risk Plan and Procedures outlined above, it is patent the assigned risk policy issued by Capital either a) never became effective because INSCORP's policy was not cancelled until Aug. 17, 2000, b) terminated upon the effective date of INSCORP's policy (which, although issued on June 22, 2000, was made effective May 19, 2000),[7] or c) was not effective because Romero, having misrepresented his status, was ineligible for assigned risk coverage. INSCORP asserts, however, that under Reg. 67–409, there was dual coverage such that the later policy issued by Capital is effective. We disagree.

Reg. 67–409 provides, in part:

A. When **duplicate or dual coverage exists** by reason of two different insurance carriers issuing two policies to the same employer securing the same liability, the **Commission shall presume the policy with the later effective date is in force and the earlier policy terminated on the effective date of the later policy.**

(emphasis supplied). Here, it is patent that the policy issued by Capital never became effective because the voluntary policy had not been cancelled. Accordingly, contrary to INSCORP's contention, there was no dual coverage, and Regulation 67–409

---

7. INSCORP asserts Capital was required to cancel its policy, pointing to several provisions in the Plan which allow an assigned risk carrier to cancel a policy upon learning the applicant is not eligible. The provisions cited by INSCORP are not controlling as there are more specific provisions governing **automatic** termination where the employer is insured in the voluntary market. INSCORP relies upon a Virginia case, *Franklin Mortgage Corp. v. Walker*, 6 Va.App. 108, 367 S.E.2d 191 (1988) to support its contention. However, *Franklin* dealt solely with the effect of the attempted cancellation of a workers' compensation policy. It did not deal with an assigned risk policy, nor did it deal with a policy for which the employer was not eligible.

is simply inapplicable. A recent Court of Appeals' opinion is instructive.

In *Avant v. Willowglen Academy*, 356 S.C. 181, 588 S.E.2d 125 (Ct.App.2003), the issue was which of two carriers, the assigned risk carrier, or a voluntary carrier, was responsible for workers' compensation coverage. Travelers had issued an assigned risk policy to Willowglen Academy. It sent a quotation to renew the policy effective August 24, 1997. Travelers was paid the premiums for this coverage in two installments on July 3, 1997 and Aug. 13, 1997. On Aug. 27 or 29, 1997, three days after the effective date of the assigned risk policy issued by Travelers, United issued an endorsement indicating its voluntary policy was effective July 1, 1997. 356 S.C. at 184–185, 588 S.E.2d at 126–127.

Avant was injured in September 1997, and Travelers (the assigned risk carrier) accepted the claim and began providing benefits. Sometime later, when Travelers learned of the dual coverage, and that the coverage with United was **voluntary,** it sought to cancel its policy effective on the date of the voluntary policy, July 1, 1997. It subsequently filed a motion with the Workers' Compensation Commission requesting a determination as to the proper carrier. The single commissioner ruled United was the proper carrier; the full commission reversed and held both parties equally liable; the circuit court reversed and held that, under Reg. 67–409, because there was dual coverage, and because the Travelers policy had the later effective date, Travelers was responsible. 356 S.C. at 186, 588 S.E.2d at 128.

The Court of Appeals reversed. Writing for the majority, Judge Connor held the assigned risk policy issued by Travelers had, under the South Carolina Assigned Risk Plan,[8] terminated on the effective date of the voluntary policy, July 1, 1997. The Court of Appeals held that Reg. 67–409 should be read in conjunction with the Assigned Risk Plan; it found that since the Plan addressed the specific situation of cancellation of an assigned risk policy upon the effective date of a voluntary policy, and the regulation was silent on this issue, the provisions of the Assigned Risk Plan should be given effect.

8. The Plan is referred to in the Court of Appeals' opinion as the WCIP (Workers' Compensation Insurance Plan).

356 S.C. at 189, 588 S.E.2d at 129. Accordingly, it found that through application of the Assigned Risk Plan, United was the only carrier with coverage on the date of the employee's injury. *Id.* We agree with the Court of Appeals' reasoning.

Under the limited factual circumstances here, we agree with *Avant* that the Assigned Risk Plan "should be read in conjunction with the Act and its regulations and be accorded effect under the facts of this case given the [Plan] addresses matters where the Act is silent." 356 S.C. at 189, 588 S.E.2d at 129. As noted by the Court of Appeals, without the Assigned Risk Plan and its procedures, "there would be nothing guiding assigned risk practice and its procedure." 356 S.C. at 188, 588 S.E.2d at 128.

In this case, because Romero had voluntary coverage in effect, his assigned risk policy never became effective. Accordingly, there was no dual coverage, and Reg. 67–409 is inapplicable. The circuit court's ruling finding INSCORP the responsible carrier is affirmed.

**AFFIRMED.**

MOORE, BURNETT, PLEICONES, JJ., concur. TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL:

I respectfully dissent. In my view, the South Carolina Workers' Compensation Act and the regulations promulgated pursuant to the Act are the sole authority governing which carrier is responsible for providing coverage in the present case.[9] Therefore, I would reverse the holding of the circuit court and affirm the full commission's finding that Capital, not INSCORP, is the responsible carrier.

In my view, the majority misconstrues the law to the extent that it reads the Workers' Compensation Act in conjunction with the guidelines set forth by the National Council on Compensation Insurance (NCCI). In my opinion the guidelines the NCCI has set forth are not controlling authority

---

9. The [Workers' Compensation] Commission shall promulgate all regulations relating to the administration of the workers' compensation laws of this State necessary to implement the provisions of this title and consistent therewith. S.C.Code Ann. § 42–3–30 (1976).

because the NCCI is not a rulemaking body. For example, in NCCI's own "Basic Manual," the NCCI is described as a rating organization or advisory organization to make and file rates for workers' compensation insurance. In addition, the guidelines state that they are not intended to replace state statute. Further, the NCCI is not authorized to promulgate regulations. *See* S.C.Code Ann 1–23–10(1), (4) (Supp.2002). As a result, I would rely solely on the Workers' Compensation Act and its corresponding regulations to determine coverage.

Because I would hold the Workers' Compensation Act and the regulations promulgated thereto as the sole controlling authority, Regulation 67–409(A) is applicable in determining which company should provide coverage.

Pursuant to Regulation 67–409(A), "[w]hen duplicate or dual coverage exists by reason of two different insurance carriers issuing two policies to the same employer securing the same liability, the Commission shall presume the policy with *the later effective date is in force and the earlier policy terminated on the effective date of the later policy.*" 25A S.C.Code Ann. Regs. 67–409(A) (1976) (emphasis added).

In the present case, INSCORP's policy has an effective date of May 19, 2000. On the other hand, Capital's policy has an effective date of June 24, 2000. Therefore, pursuant to Regulation 67–409(A), I would hold that Capital is the proper carrier because its policy has the later effective date.

Accordingly, I would affirm the full commission's finding that Capital is the responsible carrier.