FACTS/PROCEDURAL HISTORY

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Donna A. Green, Employee, Claimant, Appellant,
v.
GKN Automotive, Employer, and Zurich American, Carrier, Defendants,
Of whom GKN Automotive is the, Respondent.
 
 
 

Appeal from Richland County
 Reginald I. Lloyd, Circuit Court Judge

Unpublished Opinion No. 2005-UP-566
Submitted October 1, 2005  Filed October 26, 2005   

AFFIRMED

 
 
 
J. Marvin Mullis, Jr., of Columbia, for Appellant.
William Lee Duda, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Donna A. Green appeals the denial of her request for workers compensation benefits.  The single commissioner and appellate panel of the commission (the Commission) found Green failed to sustain her burden of proving her claimed injury was causally related to her employment.  The decision was affirmed by the circuit court.  We also affirm.[1]
FACTS/PROCEDURAL HISTORY
Claimant Donna A. Green was employed by Respondent GKN Automotive as an assembly line worker in the companys Columbia automotive parts factory.  Green had worked for GKN for approximately two years when, on February 7, 2002, she claims she was injured on the job.  In her testimony before the single commissioner, Green described what she was doing on February 7 and how she was purportedly injured.  She testified that she had been given a new job assignment that day working on a GMX 320 machine performing operations 30 and 40, tasks Green asserted were not her regularly assigned work.  These operations required Green to assemble steel automobile prop shafts.  When assembled, these prop shafts were roughly seven feet in length and each weighed about 20 pounds.  Green was then required to hang each of the finished shafts on a rack approximately seven feet tall.  Green claimed that, because of her height (about five feet, two inches tall), she had to lift the assembled prop shafts above her head and shoulders, stretch, and stand on the tips of her toes in order to place shafts on the rack.  Green claimed this exertion caused her great strain, resulting in muscle spasms down her left and right side.  She testified that she also began to feel pain and numbness in her arms during her hour-long drive home on the evening of February 7.  
When Green returned to the factory the next morning, she claimed the pain and numbness she experienced the night before continued and became more severe as she began her days work.  She reported the problem to her supervisor and the safety officer at the factory who sent her to Providence Occupational Health Services for examination.  Green was examined by Dr. Richard Boyer, who determined she was suffering from Paresthesia, or a tingling sensation, in her left arm.  He prescribed heat and ibuprofen to reduce the discomfort, and found she was fit to return to work without any restrictions on her activities.  
Green continued working normal hours until February 25, 2002, when she visited her personal physician complaining of continued upper body pain and numbness.  Greens doctor examined her and determined she should be excused from work and that she should be treated with a regimen of physical therapy.  Green followed her doctors adviceleaving work and attending regular therapy.  After several months of treatment, Green returned to work in May 2002, but she was only able to work one week.  Shortly thereafter, Green filed a Form 50 seeking temporary total disability benefits. 
At the hearing before the single commissioner, it was brought to light that Green had offered vague and contradictory reports to her employer concerning how she was injured.  A critical inconsistency was discovered in a Personal Injury Report Green had filled out and submitted to GKN on February 8, 2002, the day after her alleged injury at the factory.  In this report, Green indicated that she was injured while performing operation 50 which she further indicated was her regularly assigned worknot the new, unfamiliar work of operations 30 and 40 on the GMX 320 machine as she testified to before the single commissioner.  Green also wrote in this report that the injury occurred because the pedestal wheel [was] too tightagain, contrary to her testimony that she was injured while attempting to lift the steel prop shafts onto a rack.  Green also acknowledged that when she initially reported her injury to the factory safety officer and her supervisor, she was unable to tell either person exactly how she was injured.  
Another inconsistency was discovered in a form requesting short-term disability benefits Green had filled out and submitted to GKNs insurance carrier in March 2002.  This form required Green to describe the physical ailment that was preventing her from working, and specifically asked: Is this condition work related? and If Yes, do you intend to file a Workers Compensation claim?  Green did not answer either of these two questions, leaving that portion of the form blank.  
Further questions were raised concerning similar inconsistencies reflected in the medical reports prepared by Greens treating physicians.  For example, Dr. Boyer, the first doctor Green visited the day after her claimed injury, reported that Green complained of pain in her left arm, with no mention made of any other part of her body.  However, the report prepared by Greens personal physician after her examination two weeks later indicates that her pain started in her right arm.   
After the hearing, the single commissioner entered an order denying Greens request for workers compensation benefits.  In reaching this decision, the single commissioner noted the material inconsistencies in how Green reported her alleged injury to her employer and treating physicians.  The commissioner found that Green was unable to recall any specific incident that resulted in her injury, noting that she could not tell her GKN supervisor or the safety specialist how she was injured, nor could she provide this basic information to Dr. Boyer.  The commissioner also found that Green failed to indicate that her injuries were work-related when she applied for short-term disability benefits.  Based on these findings, the commissioner concluded Green had not met her burden of proving she had suffered an accident or injury as those terms are defined under the Workers Compensation Act or that the physical ailments she claimed to have suffered were causally related to her employment.   
Green appealed the single commissioners order to the Commission, arguing the single commissioner erred in failing to find she had suffered a repetitive trauma injury.  The Commission denied the appeal and adopted the single commissioners findings of fact and conclusions of law.  Subsequent appeal was taken to the circuit court which was also denied.  This appeal followed.
STANDARD OF REVIEW
The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers Compensation Commission.  Lark v. Bi-Lo, Inc., 276 S.C. 130, 133-34, 276 S.E.2d 304, 305-06 (1981).  Under the APA, our scope of review is limited to deciding whether the Commissions decision is unsupported by substantial evidence or is controlled by some error of law.  Rodriguez v. Romero, 363 S.C. 80, 84, 610 S.E.2d 488, 490 (2005); S.C. Code Ann. § 1-23-380(A)(6) (2005).
The findings of the Commission will be set aside only if unsupported by substantial evidence.  Anderson v. Baptist Med. Ctr., 343 S.C. 487, 492, 541 S.E.2d 526, 528 (2001).  As our courts have repeatedly held, substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action.  Pratt v. Morris Roofing, Inc., 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).  The Commission is the ultimate fact finder and the final arbiter of witness credibility and the weight to be accorded evidence.  See Parsons v. Georgetown Steel, 318 S.C. 63, 67, 456 S.E.2d 366, 368 (1995).  
LAW/ANALYSIS
In this appeal, Green asserts both legal and factual error with regard to the Commissions ruling that she failed to prove a compensable injury occurred.  Specifically, she argues the Commission applied the wrong legal standard for determining causation in this case and that, in any event, the Commissions ruling is unsupported by substantial evidence.  We disagree, finding the Commission applied the proper legal standard and that its ruling is amply supported by substantial evidence.
For an injury to be compensable under our workers compensation laws, an employee must show that her injury arose out of and in the course of employment.  S.C. Code Ann. § 42-1-160 (Supp. 2003).  An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury.  Rodney v. Michelin Tire Corp., 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996) (quoting Owings v. Anderson County Sheriffs Dept, 315 S.C. 297, 299, 433 S.E.2d 869, 871 (1993)).  
Green correctly points out that our supreme court has ruled that repetitive events causing trauma to a worker in the course of employment may be found compensable as accidents or injuries under the Act.  See Pee v. AVM, Inc., 352 S.C. 167, 174, 573 S.E.2d 785, 789 (2002) (holding that a repetitive trauma injury meets the definition of injury by accident under the Act in that it is an unforeseen injury caused by trauma).  Repetitive trauma injuries . . . have a gradual onset caused by the cumulative effect of repetitive traumatic events or mini-accidents.  Schulknight v. City of North Charleston, 352 S.C. 175, 178, 574 S.E.2d 194, 195 (2002).
As the claimant in this case, Green bore the burden of proving such facts as to render her injury compensable under the Act, and we recognize the Commission was under a concomitant obligation to enter specific findings based on its review of the record.  Shealy v. Algernon Blair, Inc., 250 S.C. 106, 109-10, 156 S.E.2d 646, 648 (1967).
In the present case, the Commissionin adopting the order of the single commissionerdid not enter any specific findings or otherwise opine on the question of whether Green suffered a compensable repetitive trauma injury, and there was no reason for the Commission to do so.  Green proceeded on the basis that her claimed injury occurred as a result of one distinct incidenta single days work assembling the steel prop shafts on February 7, 2002, away from her regularly assigned duties.[2]  The claim was not presented as one involving a repetitive trauma.  We find Greens suggestion that this is a repetitive trauma case to be incongruous with the facts in the record before us.  In any event, in light of the critical inconsistencies in Greens case and the Commissions role in assessing credibility, there is substantial evidence to support the Commissions determination that Green failed to establish a work related injury, be it a repetitive trauma injury or otherwise.[3] 
CONCLUSION
We conclude the Workers Compensation Commission applied the correct legal standard and that its determination finds substantial evidentiary support in the record.  The order of the Commission finding Donna Green was not entitled to workers compensation benefits is 
 AFFIRMED.
HEARN, C.J., STILWELL, and KITTREDGE, JJ. concur.

[1]   We decide this case without oral argument pursuant to Rule 215,
SCACR.
 [2]  Indeed, both parties stipulated in proceedings before the single commissioner that [t]he date of Claimants alleged injury is February 7, 2002. 
[3]   Green maintains that all of the inconsistencies in her various accounts can be attributed to faulty recollection or mistake by herself or others.  To be sure, Greens attempts to explain these evidentiary problems may be credible.  However, such determinations go to the heart of assessing witness credibility and the weight to be assigned to the testimonymatters exclusively within the province of the Commission.  See Parsons v. Georgetown Steel, 318 S.C. 63, 67, 456 S.E.2d 366, 368 (1995) (noting that the final determination of witness credibility and the weight to be accorded evidence is reserved to the Commission); see also Sharpe v. Case Produce, Inc., 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999) (noting that [t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissions finding from being supported by substantial evidence).