HENRY J. KLEIN, ADMINISTRATOR FOR NATALIE LISIEWICZ KLEIN, SUBSTITUTE PLAINTIFF v. AVEMCO INSURANCE COMPANY

No. 70

(Filed 17 December 1975)

1. Insurance § 147— airplane insurance — payment of past due premium installment — cancellation

Where the parties had agreed that the yearly premium for an airplane insurance policy would be paid in ten consecutive monthly installments, the insurer had a right to cancel the policy for non-payment of premium, the insured failed to make a monthly payment on time, and the insurer sent insured a notice that the policy would automatically terminate if the entire unpaid balance of the yearly premium were not paid by a certain date, payment by the insured of the past due monthly installment did not keep the policy in effect after the date specified in the notice, and the policy was effectively cancelled on that date.

2. Insurance § 147— airplane insurance — acceptance of late payments — no waiver of right to cancel

Defendant insurer did not waive its right to cancel an airplane insurance policy on 22 July by its past acceptance of late premium payments or by its acceptance of premium installment payments mailed by the insured on 10 July and 28 July where the insurer notified the insured on 11 July that the policy would terminate on 22 July for non-payment of a premium installment unless the entire yearly premium

balance was paid before that date, late premium payments in the past had complied with conditions of cancellation notices, the payment on 10 July was for a premium already earned, and a portion of the premium payment on 28 July had already been earned.

**3. Insurance § 147— airplane insurance — cancellation — tender of unearned premium**

Tender or refund of the unearned portion of a premium on an airplane insurance policy was not a condition precedent to cancellation of the policy.

ON *certiorari* to review the decision of the Court of Appeals, 26 N.C. App. 452, 216 S.E. 2d 479, (opinion by *Morris, J.,* concurred in by *Brock, C.J.* and *Hedrick, J.)* sustaining the summary judgment for defendant granted by *Barnette, J.,* at the 9 December 1974 Session, WAKE County District Court.

Plaintiff filed a complaint on 1 November 1973 alleging that the defendant issued a policy of insurance covering plaintiff's airplane and that the policy was in effect on 28 July 1973 when the airplane crashed and was damaged in an amount exceeding $5,000 and that after proper demand the defendant refused to compensate the plaintiff for damage to the said airplane.

Defendant's answer denied that the policy was in effect on 28 July 1973 and asked that the cause of action be dismissed. Later the defendant filed a motion for summary judgment alleging there was no genuine issue as to any material fact and that the defendant was entitled to a judgment as a matter of law. In support of the motion, defendant submitted an affidavit of William B. Shoemaker, its Supervisor of Accounts Receivable. The affidavit indicated that on 11 July 1973 defendant sent to the plaintiff a notice stating that her policy would be cancelled on 22 July 1973 unless a premium payment of $191.50 was received by that date; that on 16 July 1973 defendant received a payment of $38.30, but no other payments were received before 22 July 1973 and the policy was cancelled.

Plaintiff died while the action was pending, and on motion her administrator was substituted as plaintiff.

In reply to defendant's motion for summary judgment, plaintiff filed an affidavit, a deposition and several exhibits. These tended to show that the airplane had been insured with the defendant for a number of years and that the current policy was renewed on 16 January 1973 for a period of one year at a to-

tal annual premium of $383.00 to be paid in ten equal monthly installments of $38.30 each, beginning 16 January 1973; that most of the monthly payments were not made on time; that in March and May, 1973, the defendant sent to the plaintiff cancellation notices threatening to cancel the policy unless the premiums were paid immediately; that, on those occasions after the payments were made, the defendant sent to the plaintiff reinstatement notices; that by June, 1973, plaintiff had paid five monthly installments and there was remaining a total of five installments totaling $191.50 to be paid; that on 11 July 1973 defendant sent plaintiff a cancellation notice stating that the policy would be cancelled on 22 July 1973 if $191.50, the "full unpaid balance due," was not paid by that date; that plaintiff sent a sixth monthly installment of $38.30 on 10 July 1973; that she paid a seventh installment of $38.30 on 27 July 1973; and that the airplane crash occurred about 11:30 a.m. on 28 July 1973.

The affidavit of defendant's employee, Shoemaker, further showed that the payment of $38.30 which the plaintiff said was made on 27 July 1973 was not received by the defendant until 30 July 1973. Attached to the affidavit as an exhibit is a copy of the envelope in which the payment was received on 30 July 1973. This indicated that the envelope was postmarked at 1:00 p.m., 28 July 1973. The check received on 30 July 1973 was duly cashed by the defendant. The affidavit of the defendant's employee indicated that premiums of $150.00 were credited to the policy and that the unearned premium less the balance of payments due in the amount of $114.90 resulted in a refund of $35.10 which was mailed to plaintiff on 5 September 1973. This check was not cashed by the plaintiff.

*Vaughan S. Winborne for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell by C. Ernest Simons, Jr. for defendant appellee.*

COPELAND, Justice.

[1] Plaintiff first contends that since the plaintiff had paid $268.10 (seven-tenths of the total annual premium) the policy should remain in effect for seven-tenths of the year or 255 days, which according to plaintiff's calculation would mean the policy would continue in force until 28 September 1973, some two months past the date of loss. Further, plaintiff contends under his theory that, even if you disregard the last payment,

the policy would remain in effect for six-tenths of the year, or 219 days, until 23 August 1973. We do not agree with the plaintiff's method of calculation because it is contrary to the terms of the insurance contract.

"It is elemental law that payment of the premium is requisite to keep the policy of insurance in force. If the premium is not paid in the manner prescribed in the policy, the policy is forfeited. *Partial payment, even when accepted as a partial payment, will not keep the policy alive even for such fractional part of the year as the part payment bears to the whole payment.* [Citation omitted.]" (Emphasis supplied.) *Clifton v. Insurance Co.*, 168 N.C. 499, 500, 84 S.E. 817, 818 (1915).

So the first question for us to decide is as follows: Was the policy of insurance effectively cancelled by defendant prior to the date of the loss?

If the Court were to follow the interpretation of the policy advanced by the plaintiff, an insurer would never have in his possession unearned premiums subject to the cancellation because the company would be obligated to provide coverage throughout the prorated period for which premiums were paid. We believe that position is untenable.

Justice Higgins, speaking for our Court in *Walsh v. Insurance Co.*, 265 N.C. 634, 639, 144 S.E. 2d 817, 820 (1965), said: "[W]here the language of an insurance policy is plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms. [Citations omitted.]" In our case, the plaintiff and defendant had agreed that the premium would be paid in ten consecutive monthly installments and, as a result, they are bound by the terms of their agreement. Since they have so agreed, the parties shall be bound accordingly. *Duke v. Insurance Co.*, 286 N.C. 244, 210 S.E. 2d 187 (1974).

It has long been our policy to construe insurance policies liberally in favor of the insured, but this rule will not permit us to write into the contract terms beyond its meaning. We cannot rewrite it and make a new contract for the parties. *Duke v. Insurance Co., supra,* 4 Strong, N. C. Index 2d, Insurance, § 6, p. 461.

The facts in *Allen v. Insurance Co.*, 215 N.C. 70, 1 S.E. 2d 94 (1939), are instructive. That case involved a suit to recover

on a policy of accident and health insurance. Under the terms of the policy, premiums were due on the first of each month with a seven day grace period, with a further provision that acceptance of the premiums by the company after that time should reinstate the policy only as to accidental injuries thereafter sustained and such sickness as might begin more than ten days after such acceptance. It was held that under the terms of the contract the policy lapsed as of the due date of the premiums upon failure to pay the premium prior to the expiration of the grace period and that tender of payment on the 20th day of the month did not put the policy in force as to illness beginning on the seventh day of the month. The net effect was that the acceptance of the premiums had the effect under the contract of reinstating the policy prospectively only.

As Chief Justice Clark stated in speaking for the Court in *Hay v. Association,* 143 N.C. 256, 259, 55 S.E. 623, 624 (1906) : "It is true it is found in this case that prior to 1905 the defendant had, on some occasions, accepted payment by the insured of assessments after the date at which they should have been paid. It is not found how often nor after how long a default these indulgencies were granted. But these were mere personal favors and cannot be construed into a standing waiver of the terms of the contract. They did not constitute a 'course of dealing' which amounted to an express agreement that premiums need not be paid promptly . . . . " Later Chief Justice Clark pointed out: "But insurance is a business proposition, and no company could survive if the insured could default while in good health, but retain a right to pay up when impaired health gives warning." *Id.* at 259, 55 S.E. at 625.

It might be noted in our case that each time the defendant sent a cancellation notice to the plaintiff it clearly set forth the date that the policy would be cancelled if payment were not made. Except for the final notice requiring a payment of $191.50 on 22 July 1973, the plaintiff always paid past due premiums prior to the effective cancellation date and defendant, in turn, sent a reinstatement notice to the plaintiff. Thus, when the June payment was not paid when due, the defendant, having an absolute right to cancel the policy on ten days' notice, sent plaintiff a cancellation notice requiring the payment of $191.50 by cashier's check or money order by 22 July 1973 and providing that coverage would automatically terminate if the payment were not made by that date. The payment which the plaintiff said he mailed

on 10 July 1973 was received by the defendant on 16 July 1973 in the amount of $38.30, but this only took care of the premium due 16 June 1973. The plaintiff did not by this comply with the terms of the cancellation notice mailed on 11 July 1973. For whatever reason, the plaintiff chose not to comply with the conditions. Thus, by the terms of the policy and the notice mailed 11 July 1973, the policy was duly cancelled on 22 July 1973, prior to the date of the loss on 28 July 1973. The above contention of the plaintiff that "unearned premiums" in the hands of the insured prevent the defendant from cancelling the policy for nonpayment is without merit and is overruled.

Next the plaintiff contends that the defendant by its conduct waived the plaintiff's forfeiture and that the defendant is estopped from claiming cancellation of the policy.

Our Court in *Manufacturing Co. v. Building Co.*, 177 N.C. 103, 107, 97 S.E. 718, 720 (1919), said: "Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be designed, or one party must have so acted as to induce the other to believe that he intended to waive, when he will be forbidden to assert the contrary." (Quoted in *Realty Co. v. Spiegel, Inc.*, 246 N.C. 458, 98 S.E. 2d 871 (1957)).

Waiver sometimes has the characteristics of estoppel and sometimes of contract, but it is always based upon an express or implied agreement. There must always be an intention to relinquish a right, advantage, or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been intentionally given up. "There can be no waiver unless it is intended by one party and so understood by the other, or unless one party has acted so as to mislead the other." 7 Strong, N. C. Index 2d, Waiver, § 2, p. 527.

Also, our Court, speaking through Justice Stacy (later Chief Justice) said: " 'A course of action on the part of the insurance company which leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' [Citations omitted.]" *Paul v. Ins. Co.*, 183 N.C. 159, 162, 110 S.E. 847, 849 (1922).

[2]   Here the plaintiff contends that the defendant waived its right to cancel the policy by (1) allowing plaintiff to become delinquent in premium payments; (2) accepting the premium payment mailed by the plaintiff on 10 July 1973 and received by the defendant on 16 July 1973; and (3) accepting the premium mailed on 27 July 1973, postmarked 1 p.m., 28 July 1973, and received 30 July 1973.

An analysis of this case indicates the defendant did not in any way lead the plaintiff to believe that the policy would be kept in force other than upon the condition provided in the cancellation notice. The notice, effective 22 July 1973, was certainly clear and unambiguous. It plainly informed the plaintiff that further delinquency would not be tolerated beyond the terms of the notice. Since notice of cancellation was given on 11 July 1973 to be effective on 22 July 1973, the requirement of the insurance contract that there be ten days' notice for cancellation was fully satisfied. There had been cancellation notices in the past, but plaintiff could not complain of being led into a false sense of security as to them because on each of these occasions the plaintiff had complied with the condition of the cancellation notice requiring payment. The payment sent by the plaintiff on 10 July 1973 and received by the defendant on 16 July 1973 was for the premium due 16 June 1973; so at the time of receipt the defendant had earned the full amount of that premium and was entitled to retain it. With regard to the $38.30 check sent by the plaintiff on 27 July 1973 and received by the defendant on 30 July 1973, the defendant had earned $3.20 of that payment for the interim period between 16 July 1973 and the effective cancellation date of 22 July 1973. Thus, it was proper for the defendant to cash that check and refund to plaintiff the remaining $35.10. Under Paragraph 20 of the policy, "Cancellation for Non-Payment of Installment Premium," it is provided: "Upon the failure of the named insured to pay any installment of the premium, the insurance shall cease and terminate, provided at least ten (10) days notice is mailed by the company to the named insured at the address shown in this policy stating when thereafter such cancellation shall become effective. Such cancellation shall be deemed to have been made at the request of the named insured and shall be on a short rate basis." The short rate basis table is a part of the insurance contract. Thus, it was entirely correct for the defendant to use this table in arriving at the "unearned premium" refund of

$35.10. The procedure used conformed to the language of the insurance contract.

In conclusion, under these circumstances the plaintiff has failed to bring himself within the guidelines of our Court pertaining to waiver and estoppel, and this assignment of error is overruled.

[3] We next separately consider the related contention that tender or refund of the unearned portion of the premium was a condition precedent to cancellation of the policy.

In this connection it is well for us to look again at the insurance contract for guidance. Paragraph 19 of the contract provides, among other things, "[B]ut payment or tender of unearned premium is not a condition of cancellation." We have already observed that in Paragraph 20 it is provided that when cancellation is made for non-payment of premium, it "shall be deemed to have been made at the request of the named insured and shall be on a short rate basis."

Thus, the language of the insurance contract requires an answer favorable to the defendant. Our research fails to find any North Carolina decision directly in point, but in other jurisdictions where they were dealing with provisions similar to those in our case, the rule is that refund or tender of unearned premium is not a condition precedent to cancellation for non-payment of premium. Annot., 16 A.L.R. 2d, 1200-1208. *See also* cases cited therein.

Furthermore, as we have stated, the facts of this case clearly negate estoppel or waiver. The policy was effectively cancelled on 22 July 1973, some six days prior to the occurrence of the loss at a time when there were no unearned premiums. Moreover, since the plaintiff was indebted to the defendant in the sum of $3.20 under the terms of the insurance contract, under no theory of the law could the check for $38.30 mailed on 27 July 1973 and postmarked a 1:00 p.m. on 28 July 1973, breathe life into an insurance contract that had been cancelled six days before. It was not enough to insert "July Payment" at the bottom of the check. Certainly the defendant had a right to cancel the policy when the premiums were not paid when due, and by the same token it had a right to state the conditions under which the policy could be kept in force. The assignment of error is overruled.

Rule 56(c) of Chapter 1A-1 of the General Statutes provides in part as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* . . . ." (Emphasis supplied.) The district court operating under the provisions of Rule 56 determined that there was no *genuine issue as to any material fact between the parties* in this case. For all the reasons above indicated, we conclude that the decision of the district court is correct and that the decision of the North Carolina Court of Appeals should be

Affirmed.