626 S.E.2d 797

Marty K. AVANT, Employee, Claimant,

v.

WILLOWGLEN ACADEMY, Employer, United Heartland
and Travelers Property Casualty Co., Carriers,

of which United Heartland is Petitioner,

and

Travelers Property Casualty Co. is Respondent.

No. 26102.

Supreme Court of South Carolina.

Heard Oct. 18, 2005.
Decided Jan. 30, 2006.
Rehearing Denied March 8, 2006.

Roy A. Howell, III and Kirsten L. Barr, both of Trask & Howell, LLC, of Mount Pleasant, for Petitioner.

Johnnie W. Baxley, III, of Wilson, Jones, Carter & Baxley, LLC, of Mt. Pleasant, for Respondent.

Justice PLEICONES:

This is a workers' compensation case. Respondent Travelers Property Casualty Co. (Travelers) moved the Workers' Compensation Commission to identify Petitioner United Heartland (United) as the insurer responsible for the claim of Willowglen Academy (Willowglen). The single commissioner held United responsible. The appellate panel of the commission affirmed in part and reversed in part, holding Travelers and United equally responsible. The circuit court affirmed in part and reversed in part, holding Travelers solely responsible. The Court of Appeals reversed, holding United solely responsible. *Avant v. Willowglen Academy*, 356 S.C. 181, 588 S.E.2d 125 (Ct.App.2003). We granted a writ of certiorari to review the Court of Appeals' opinion and now affirm.

## FACTS

Travelers insured Marty Avant's employer, Willowglen Academy, through an assigned-risk workers' compensation policy administered by the National Council on Compensation Insurance (NCCI). The policy was effective from August 24, 1996 through August 24, 1997.

Although covered by the assigned-risk policy with Travelers, Willowglen procured voluntary insurance from United, effective July 1, 1997. An employer able to procure voluntary insurance is ineligible for assigned-risk insurance,[1] but Willowglen neither notified Travelers or the NCCI of the voluntary coverage nor attempted to cancel the assigned-risk policy. More important, Willowglen actually renewed the assigned-risk policy with Travelers for the period August 24, 1997 through August 24, 1998 (the renewal policy).

On September 6, 1997, a date within both Travelers' and United's respective stated coverage periods, Marty Avant was injured. Willowglen submitted the claim to Travelers, which remained unaware of the voluntary policy with United. Travelers accepted the claim and began providing benefits.

Travelers eventually became aware of the voluntary policy, in January 1998. Travelers issued a notice of cancelation retroactive to July 1, 1997, the date on which Willowglen acquired voluntary insurance from United.[2] Travelers refunded all premiums paid by Willowglen for assigned-risk coverage after that date.

Subsequently, Travelers filed a motion with the Workers' Compensation Commission to identify United as the sole responsible carrier. The single commissioner relied on the South Carolina Workers' Compensation Assigned Risk Plan (the Assigned Risk Plan or the Plan), which was filed with the Department of Insurance by the NCCI and approved by the Director of the Department of Insurance. The commissioner then held that under the Assigned Risk Plan, Travelers' assigned-risk coverage terminated as a matter of law on July 1, 1997, the date on which United began providing voluntary

---

1. S.C.Code Ann. § 38–73–540(A) (2002).

2. Travelers initially issued a notice of cancellation effective March 19, 1998, which is not germane to the issues before us.

coverage. The commissioner therefore ruled that United was solely responsible for Willowglen's claim.

On appeal, the commission's appellate panel affirmed in part and reversed in part. Preliminarily, the panel held that the Assigned Risk Plan does not "supersede" the workers' compensation regulations. The panel then found that both Travelers and United "intended to have coverage on September 6, 1997" and that "[e]quity, in the light of the circumstances of this case, require[d]" that United and Travelers equally share responsibility.

On further appeal, the circuit court affirmed in part and reversed in part. The court found the Plan inapplicable and held Travelers alone responsible under the workers' compensation regulations. According to the court, Travelers' attempt to retroactively cancel its coverage was ineffective because the regulations do not permit retroactive cancelation. Also under the regulations, Travelers was presumed responsible because the effective date of its renewal policy (August 24, 1997) was later than that of United's voluntary policy (July 1, 1997). *See* 25A S.C.Code Ann. Regs. 67–409(A) (1990) (addressing dual coverage); *infra,* note 5.

On further review, the Court of Appeals reversed. The court held that the Assigned Risk Plan has the force of law and determined that the Plan "should be read in conjunction with the Act and its regulations and be accorded effect under the facts of this case given [the Plan] addresses matters where the Act is silent." *Avant,* 356 S.C. at 187–89, 588 S.E.2d at 128–29. The Court of Appeals then held that Travelers' coverage terminated as a matter of law as soon as United issued its voluntary policy. *Id.* Consequently, the court ruled that United was solely responsible.

## ISSUES

I. Whether the Assigned Risk Plan has the force of law.

II. Whether Travelers or United is the responsible carrier.

## ANALYSIS

We adhere to our holding in *Rodriguez v. Romero* 363 S.C. 80, 88, 610 S.E.2d 488, 492 (2005), that the Plan has the force

of law. In addition, we hold that United is responsible for Willowglen's claim. We therefore affirm.

## I. FORCE OF LAW

■ Under the Administrative Procedures Act, " '[p]olicy or guidance issued by an agency other than in a regulation does not have the force of law.' " S.C.Code Ann. § 1–23–10(4) (Supp.2002). None of the provisions of the Assigned Risk Plan has been promulgated as a regulation. United argues that the lack of promulgation requires a finding that the Plan lacks the force of law, meaning only the workers' compensation regulations are controlling. *See also Rodriguez*, 363 S.C. at 88–89, 610 S.E.2d at 492–93 (Toal, C.J., dissenting); *Avant*, 356 S.C. at 193–97, 588 S.E.2d at 131–33 (Anderson, J., dissenting). We disagree.

The General Assembly has delegated certain authority over assigned-risk insurance to the Director of the Department of Insurance.[3] South Carolina Code section 38–73–540(A)(1)[4] states that "any mechanism designed to implement" the assigned-risk agreement executed by the state's insurers "must be submitted in writing to the director or his designee for approval prior to use, together with such additional information as the director or his designee may reasonably require." The Code does not require that the implementation mechanism be promulgated as a regulation. Rather, the mechanism attains the force of law when it is approved by the Director of the Department of Insurance.

■ Moreover, the provisions of the Plan prevail over the workers' compensation regulations. Code section 38–73–540 specifically addresses assigned-risk insurance and the mechanism for implementing assigned-risk agreements, whereas the regulations address workers' compensation generally. The principle that more specific rules prevail over general ones applies, and the Plan is the product of a more specific statute. *See Mims v. Alston*, 312 S.C. 311, 313, 440 S.E.2d 357, 358–59 (1994) (applying the principle). The Plan controls with respect to issues it addresses.

---

3. Whether the delegation is lawful is not an issue before us.

4. S.C.Code Ann. § 38–73–540(A)(1) (2002).

■ In comparison, the Court of Appeals held that the Plan "should be read in conjunction with [the Workers' Compensation Act] and its regulations and be accorded effect under the facts of this case given [the Plan] addresses matters where the Act is silent." *Avant*, 356 S.C. at 189, 588 S.E.2d at 129 (quoted with approval in *Rodriguez*, 363 S.C. at 88, 610 S.E.2d at 492). Because this passage could be interpreted to mean that the Plan fills gaps in the workers' compensation regulations, we clarify that the regulations fill gaps in the Plan. As discussed below, the Plan resolves the issues in this case, so there is no need to resort to the workers' compensation regulations.

## II. RESPONSIBLE CARRIER

As stated above, Marty Avant was injured on September 6, 1997, a date within the stated coverage periods of both Travelers' renewal policy and United's voluntary policy. After becoming aware of Willowglen's voluntary policy with United, Travelers canceled its assigned-risk policy retroactive to July 1, 1997, the effective date of United's voluntary policy, and refunded all premiums paid by Willowglen for assigned-risk coverage after that date.

■ The first issue is whether Travelers' renewal policy in fact became effective on its stated effective date, August 24, 1997. If it did, then there was dual coverage on September 6, 1997, and because the Plan does not address dual coverage, a workers' compensation regulation applies . . . in favor of United.[5] For the reasons stated below, we find that Travelers' renewal policy never became effective, so the dual-coverage issue does not arise.

---

5. Regulation 67–409(A) states:

> When duplicate or dual coverage exists by reason of two different insurance carriers issuing two policies to the same employer securing the same liability, the Commission shall presume the policy with the later effective date is in force and the earlier policy terminated on the effective date of the later policy.
> 25A   S.C.Code Ann. Regs. 67–409(A) (1990).

Because its policy's stated effective date is later than that of United's policy, Travelers would be presumed responsible if Regulation 67–409(A) were controlling.

In *Rodriguez,* we held that the assigned-risk policy at issue never became effective because the insured, like Willowglen here, procured voluntary coverage prior to the assigned-risk policy's effective date. *Rodriguez* involved a more recent edition of the Assigned Risk Plan, however, and that edition contained language different from this edition. That edition stated:

[A]ny insurer that wishes to insure an employer as voluntary business may do so at any time. If such insurer is not the contract carrier, the contract carrier shall cancel its policy pro rata and the **coverage** shall automatically terminate as of the effective date of the voluntary insurer's policy.

(all but "pro rata" quoted in *Rodriguez,* 363 S.C. at 85–86, 610 S.E.2d at 491 (emphasis in opinion altered)).

The edition involved in this case states:

[A]ny insurer that wishes to insure an employer as voluntary business may do so at any time. If such insurer is not the assigned carrier, the assigned carrier shall cancel its policy pro rata and the **assignment** shall automatically terminate as of the effective date of the voluntary insurer's policy.

United argues that the difference is critical. United emphasizes that the *assignment* flows from the insurer's contractual relationship with the other insurers participating in the Assigned Risk Plan, whereas *coverage* flows from the insurance policy, which represents the relationship between the insurer and the insured. According to United, the edition of the Plan involved here plainly addresses the automatic termination of only the assignment. Based on the principle *inclusio unius est exclusio alterius,* United asserts that under this edition of the Plan, assigned-risk *coverage* does not automatically terminate upon the commencement of voluntary coverage. *See, e.g., German Evangelical Lutheran Church of Charleston v. City of Charleston,* 352 S.C. 600, 606–07, 576 S.E.2d 150, 153 (2003) (applying the principle); *Hodges v. Rainey,* 341 S.C. 79, 86–87, 533 S.E.2d 578, 582 (2000) (same). Accordingly, United claims, Travelers' assigned-risk coverage with Willowglen continued to exist until Travelers affirmatively canceled the re-

newal policy, after September 6, 1997.[6]

At first glance, United's argument is appealing. This edition of the Plan does say "assignment," not "coverage." Nevertheless, the effect of the automatic termination of the assignment is the automatic termination of coverage. Without the assignment there never would have been any policy or coverage. We therefore hold that Travelers' assigned-risk coverage automatically terminated when United's voluntary coverage commenced. Consequently, coverage under the renewal policy never became effective. *Cf. Rodriguez,* 363 S.C. at 82–83, 88, 610 S.E.2d at 489–90, 492 (involving an insured who procured assigned-risk insurance after procuring voluntary coverage, and holding that the assigned-risk policy never became effective). There was no dual coverage on September 6, 1997. United was the only carrier.

We see no significance in the issues raised by United related to the timing and retroactivity of Travelers' cancellation of the policy. *See Avant,* 356 S.C. at 191, 588 S.E.2d at 130 (addressing the issues and holding that the Plan "allows for this retroactive cancellation"). As we have stated, coverage under Travelers' renewal policy never went into effect. United was the only carrier providing workers' compensation coverage on September 6, 1997, so United is solely responsible for the claim.

## CONCLUSION

United was the only carrier covering Willowglen when Marty Avant was injured. United is therefore solely responsible for the claim. The decision of the Court of Appeals is

**AFFIRMED.**

MOORE, WALLER and BURNETT, J.J., concur.

TOAL, C.J., dissenting in a separate opinion.

---

**6.** As mentioned above, in 1998 Travelers canceled its policy retroactive to July 1, 1997. As discussed below, United argues that this retroactive cancelation was invalid.

Chief Justice TOAL:

I respectfully dissent. In my view, the South Carolina Workers' Compensation Act and the regulations promulgated pursuant to the Act are the sole authorities for determining the responsibility for providing workers' compensation coverage. For this reason, I would reverse the holding of the court of appeals and affirm the circuit court's finding that Travelers, not United, is responsible in this case.

As I stated in *Rodriguez*,[7] the majority misconstrues the law to the extent that it reads the Workers' Compensation Act in conjunction with the guidelines set forth by the National Council on Compensation Insurance (NCCI). The NCCI is not a rulemaking body, and furthermore, the NCCI possesses no authority to promulgate regulations with any binding force in South Carolina.[8] The NCCI is simply an advisory body that provides its subscribers with information and data analysis services.

Like *Rodriguez*, at issue in this case are NCCI provisions regarding how assigned risk insurance policies should be terminated when an insured obtains voluntary coverage at a later time. In my opinion, the majority continues to misinterpret S.C.Code Ann. § 38–73–540(A)(1) to grant the director of the Department of Insurance the discretionary authority to adopt binding regulations governing assigned risk insurance policies. The statute does not grant such power to the director, but instead allows the director to approve agreements made among assigned risk insurance carriers. Any approved agreement would of course bind the agreeing parties, but the question of whether these agreements bind an individual insured is an entirely different matter.

Any agreement that has not undergone the process of regulatory approval called for in the Administrative Procedures Act cannot be viewed as a regulation that carries the force of law. Furthermore, unless these agreements or their

---

7. *Rodriguez v. Romero,* 363 S.C. 80, 88–89, 610 S.E.2d 488, 492–93 (2005) (Toal, C.J.dissenting).

8. Under South Carolina law, the Workers' Compensation Commission is responsible for promulgating all regulations relating to the administration of the workers' compensation laws. S.C.Code Ann. § 42–3–30 (1976).

terms appear in the individual assigned risk insurance policies, it is clear that the terms of these agreements cannot be viewed as binding contractual provisions. The assigned risk policy at issue in this case says nothing about termination of the policy upon the purchase of a voluntary policy by the insured. Therefore, I would rely solely on the Workers' Compensation act and its corresponding regulations to determine coverage.

The applicable workers' compensation regulation provides that when there are two insurance policies securing the same liability, the policy with the later effective date is responsible for coverage. 25A S.C.Code Ann. Regs. 67–409(A) (1976). In the instant case, Travelers' policy has an effective date of August 24, 1997 and United's policy has an effective date of July 1, 1997. Pursuant to Regulation 64–409(A), I would hold that Travelers is the proper carrier because its policy has the later effective date.

With this decision, the majority has significantly weakened South Carolina's Administrative Procedures Act and, in my view, improperly empowered the head of an administrative agency to promulgate rules having the force of law. The legislature may not empower the head of an agency to unilaterally make declarations carrying the binding force of law; therefore, we cannot interpret § 38–73–540(A)(1) in this manner. I find it extremely telling that the majority would give binding force to these NCCI regulations which do not appear in the State Register, have not been debated in the Legislature, and are published in no public resource. Although the majority is arguably not creating "secret law" in the sense that it existed in several agencies prior to the enactment of the APA, unfortunately, it appears we now must purchase an NCCI subscription to ascertain the particulars of South Carolina workers' compensation law.

Accordingly, I would reverse the court of appeals and affirm the circuit court's finding that Travelers is the responsible carrier.