719 S.E.2d 695

Everett BURRIS, Respondent,

v.

PROPST LUMBER & LOGGING, INC., Appellant,

and

Capital City Insurance, Respondent,

and

SC Uninsured Employers' Fund, Respondent.

No. 4904.

Court of Appeals of South Carolina.

Heard Sept. 13, 2011.
Decided Nov. 2, 2011.

86

Amy V. Cofield, of Lexington, for Appellant.

Mark D. Cauthen and Peter P. Leventis, IV, both of Columbia, for Respondent Capital City Insurance Company.

GEATHERS, J.

Appellant Propst Lumber and Logging, Inc. ("Employer") challenges a decision of the Appellate Panel of the South Carolina Workers' Compensation Commission ("Appellate Panel") concluding Employer's workers' compensation policy did not provide coverage on the date Respondent Everett Burris ("Claimant") sustained injuries while working for Employer. We affirm.

## FACTS/PROCEDURAL HISTORY

Respondent Capital City Insurance Company ("Carrier") is a servicing carrier for the South Carolina Workers' Compen-

sation Assigned Risk Plan, which facilitates the issuance of workers' compensation insurance policies to employers who are unable to obtain coverage through the voluntary market. The National Council on Compensation Insurance ("NCCI") administers the Assigned Risk Plan, which is governed by NCCI's South Carolina Operating Rules and Procedures.[1]

Employer contracted with Carrier for workers' compensation insurance coverage for the period of June 2006 through June 2007. The terms of the contract required Employer to pay an initial estimated premium and allowed Carrier to determine the final premium after the policy period ended by auditing Employer's records. Carrier was allowed to bill or refund Employer for the difference between the final premium and the estimated premium. On August 8, 2007, Carrier executed a final audit resulting in an invoice to Employer for an additional payment of $1,440 for the policy period of June 2006 through June 2007.

In the meantime, Carrier renewed the policy for the subsequent period of June 2007 through June 2008, and Employer paid an estimated premium of $24,463 through Johnson & Johnson Preferred Financing. After Carrier conducted the final audit for the 2006–2007 policy, Carrier used the information from the audit for an endorsement to the 2007–08 policy to reflect a more accurate annual premium basis. On August 10, 2007, Carrier sent Employer a notice of an additional premium due in the amount of $4,862 to supplement the estimated premium Employer had already paid for the 2007–08 policy period.

On September 4, 2007, Carrier sent a notice cancelling the 2007–08 policy based on Employer's failure to pay the additional amounts billed for the 2006–07 policy and the 2007–08 policy. The notice advised Employer that the 2007–08 policy would be cancelled on October 10, 2007 if the additional premiums were not paid by then. Employer made partial payments on November 8, 2007 and November 15, 2007, but Employer did not pay the remaining amount due until November 26, 2007. Carrier then reinstated the 2007–08 policy,

1. NCCI obtained its authority to promulgate these Operating Rules and Procedures from the South Carolina Department of Insurance.

effective November 27, 2007; however, there was a lapse in coverage from October 10, 2007 through November 26, 2007.

On January 15, 2008, Claimant filed a Form 50/Employee's Notice of Claim and/or Request for Hearing with the Workers' Compensation Commission, alleging he injured his left leg and lower back on November 5, 2007, while working for Employer. On February 8, 2008, Carrier filed a Form 51/Employer's Answer to Request for Hearing denying it had provided coverage for Employer on the date of Claimant's injury. The 2007–08 policy was later cancelled in April 2008 due to safety violations and was not reinstated. On June 9, 2008, Carrier paid Johnson & Johnson a premium refund in the amount of $15,471 for the 2007–08 policy.

At the hearing before the single commissioner, Employer argued (1) the 2007–08 policy was not properly cancelled on October 10, 2007, because Carrier had no right to endorse the 2007–08 policy based on the August 8, 2007 audit; and (2) the reasons for cancellation of the policy were not proper because the required premiums had been paid, and no premiums were refunded for the period of the alleged lapse in coverage. The single commissioner concluded Carrier properly cancelled the 2007–08 policy, resulting in a lapse in coverage at the time of Claimant's injury.

The Appellate Panel affirmed the single commissioner's order and held Employer directly responsible for paying benefits to Claimant. In its decision, the Appellate Panel concluded the Assigned Risk Supplement to the Basic Manual for Workers' Compensation and Employers' Liability Insurance (NCCI 2006) ("Assigned Risk Supplement") permitted the premium endorsement to the 2007–08 policy. The Appellate Panel also concluded Carrier properly cancelled Employer's coverage for non-payment of premiums and there existed a lapse in coverage from October 10, 2007, through November 26, 2007. This appeal followed.

## ISSUES ON APPEAL

I. Did the Appellate Panel correctly conclude the Assigned Risk Supplement authorized the premium endorsement to the 2007–08 policy?

II. Did the Appellate Panel err in concluding Carrier properly cancelled Employer's coverage?

III. Did the Appellate Panel err in concluding a lapse in Employer's workers' compensation coverage occurred from October 10, 2007, through November 26, 2007?

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions by the Appellate Panel of the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Specifically, section 1–23–380 of the South Carolina Code (Supp.2010) provides this court may not substitute its judgment for the Appellate Panel's judgment as to the weight of the evidence on questions of fact, but may reverse when the decision is affected by an error of law.[2] *See Hamilton v. Bob Bennett Ford*, 336 S.C. 72, 76, 518 S.E.2d 599, 600–01 (Ct.App. 1999), *modified on other grounds*, 339 S.C. 68, 528 S.E.2d 667 (2000), *overruled on other grounds, Allison v. W.L. Gore & Assocs.*, 394 S.C. 185, 714 S.E.2d 547 (2011) (interpreting section 1–23–380).

## LAW/ANALYSIS

I. *Authority for Premium Endorsement*

Employer maintains the Appellate Panel incorrectly concluded that the Assigned Risk Supplement authorized Carrier's premium endorsement to the 2007–08 policy. Employer

---

**2.** The pertinent language of South Carolina Code section 1–23–380 follows:

The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

argues the policy did not permit a premium endorsement before the final audit at the end of the policy period because: (1) the policy's specific language states: "The final premium will be determined after this policy ends"; (2) there is no language in the policy informing Employer that the policy's terms are subject to the Assigned Risk Supplement; and (3) the language of the Assigned Risk Supplement did not require Carrier to issue a premium endorsement. We address each of these arguments in turn.

### A. *Policy Language*

■ Employer contends the policy did not permit a premium endorsement before the final audit at the end of the policy period because the policy required the final premium to be determined after the policy had ended. Employer also argues the "Information Page" for the policy indicated that the audit period was annual; and, therefore, the policy prohibited Carrier from issuing an interim premium endorsement. We disagree.

Employer's policy states the following regarding the premium:

All premium[s] for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

. . . .

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

2007–08 Workers' Compensation and Employers' Liability Insurance Policy, Part Five, sections A & B. These policy provisions are consistent with the Assigned Risk Supplement's requirement for a premium endorsement to an assigned risk policy when a carrier discovers information indicating the need

to more accurately reflect the exposure base or classification of the policyholder:

1) The carrier will *periodically* review the operations of the insured throughout the policy period to determine if the correct classification and/or payroll information is being used. *If* subsequent to assignment and/or initial policy issuance, *the carrier discovers* or receives, either through *interim audit, endorsement request,* claim information, loss prevention survey, or other means, verifiable:

a) Payroll information that is not consistent with the annual exposure base as assigned or

b) Classification information that raises doubt concerning the accuracy of the policy's classification(s)

[t]he carrier must investigate and make a determination within thirty (30) days of the carrier's knowledge *whether an endorsement to the policy is needed to accurately reflect the exposure base and/or classification(s) of the policyholder.*

2) The carrier must use sound underwriting judgment using the latest available audit information to develop [a] current policy premium.

Assigned Risk Supplement to the Basic Manual for Workers' Compensation and Employers' Liability Insurance § 2(D)(7)(b)(2)(a) (NCCI 2006) (emphasis added).

Significantly, the Assigned Risk Plan, which includes the Assigned Risk Supplement, has the force of law:

The General Assembly has delegated certain authority over assigned-risk insurance to the Director of the Department of Insurance. South Carolina Code section 38–73–540(A)(1) states that "any mechanism designed to implement" the assigned-risk agreement executed by the state's insurers "must be submitted in writing to the director or his designee for approval prior to use, together with such additional information as the director or his designee may reasonably require." The Code does not require that the implementation mechanism be promulgated as a regulation. Rather, *the mechanism attains the force of law when it is approved by the Director of the Department of Insurance.*

Moreover, *the provisions of the Plan prevail over the workers' compensation regulations.* Code section 38–73–

540 specifically addresses assigned-risk insurance and the mechanism for implementing assigned-risk agreements, whereas the regulations address workers' compensation generally. The principle that more specific rules prevail over general ones applies, and the Plan is the product of a more specific statute. *The Plan controls with respect to issues it addresses.*

*Avant v. Willowglen Acad.*, 367 S.C. 315, 319, 626 S.E.2d 797, 799 (2006) (citations omitted) (emphasis added).

The policy provision cited by Employer, i.e. Part Five, section E, governs the amount of the final premium and when it will be determined, as does the Information Page indicating that the audit period is annual; these provisions are not necessarily inconsistent with the specific provisions in the policy and the Assigned Risk Supplement authorizing a premium endorsement when necessary to reflect actual exposures. In any event, to the extent the final premium provision and the information page are inconsistent with the Assigned Risk Supplement, the Assigned Risk Supplement controls. *See Avant*, 367 S.C. at 319, 626 S.E.2d at 799 (holding the Assigned Risk Plan attains the force of law when approved by the Insurance Director). Therefore, the policy provisions did not prohibit Carrier from issuing the premium endorsement in this case.

### B. *Assigned Risk Supplement*

 Employer also contends there is no language in the policy informing Employer that the policy's terms are subject to the Assigned Risk Supplement, and, therefore, Employer is not subject to the Assigned Risk Supplement's provisions. We disagree.

Initially, this specific issue is not preserved for appellate review because Employer did not specifically raise this point in its Statement of Issues on Appeal. Therefore, the court need not consider it. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

As to the merits of this issue, undisputed evidence in the record indicates Employer's policy was an assigned risk policy

provided by Carrier pursuant to the Assigned Risk Plan.[3] The Assigned Risk Plan, which includes the Assigned Risk Supplement, is controlling law with respect to the issues it addresses. *Avant*, 367 S.C. at 319, 626 S.E.2d at 799. Further, the policy specifically states that any of its terms conflicting with the workers' compensation law are changed to conform to the law. 2007–08 Workers' Compensation and Employers' Liability Insurance Policy, Part One, section H(6). Therefore, the policy placed Employer on notice that it was subject to the Assigned Risk Supplement.

### C. *Premium Endorsement*

█ Employer also argues the language of the Assigned Risk Supplement did not require Carrier to issue a premium endorsement because the additional premium generated by the August 8, 2007 audit did not reach 25% of the estimated annual premium. We disagree.

The Assigned Risk Supplement states that a carrier must issue an additional premium endorsement if the additional premium generated by an audit is at least $500 or 25% of the estimated annual premium, whichever is greater. Assigned Risk Supplement to the Basic Manual for Workers' Compensation and Employers' Liability Insurance § 2(D)(7)(b)(2)(b) (NCCI 2006). The additional premium for the 2007–08 policy, $4,862, was less than 25% of the estimated annual premium. The estimated annual premium for the 2007–08 policy period was $24,463. Twenty-five percent of this annual premium is $6,115.75.

However, another provision of the Assigned Risk Supplement requires Carrier to "investigate and make a determination ... whether an endorsement to the policy is needed to accurately reflect the exposure base and/or classification(s) of the policyholder." Assigned Risk Supplement to the Basic Manual for Workers' Compensation and Employers' Liability Insurance § 2(D)(7)(b)(2)(a) (NCCI 2006). This language authorizes the carrier to exercise its discretion as to when a premium endorsement is necessary. Further, the Assigned

---

3. Specifically, Carrier's Assistant Vice President for Residual Market Operations testified Employer's policy was an assigned risk policy issued in the residual market under the Assigned Risk Plan.

Risk Supplement requires the carrier to use sound underwriting judgment using the latest available audit information to develop a current policy premium. *Id.* Therefore, at the very least, the Assigned Risk Supplement authorized, if not required, Carrier to issue a premium endorsement to Employer's 2007–08 policy despite the fact that the endorsement did not represent 25% of the estimated premium.

Based on the foregoing, the Appellate Panel properly concluded the Assigned Risk Supplement authorized the premium endorsement to the 2007–08 policy.

## II. *Cancellation of Coverage*

Employer asserts the Appellate Panel erred in concluding Carrier properly cancelled Employer's coverage because: (1) the premium endorsement requiring Employer to pay an additional amount of funds was invalid for lack of a signature; and (2) Carrier failed to timely return the unearned portion of the premium paid by Employer. We address each of these arguments in turn.

### A. *Unsigned Endorsement*

█ Employer contends the premium endorsement requiring Employer to pay additional funds was invalid for lack of a signature. However, Employer does not cite any authority for this proposition or present any further discussion in its brief for this conclusory statement. Therefore, Employer has abandoned this point. *See State v. Garner,* 389 S.C. 61, 67, 697 S.E.2d 615, 618 (Ct.App.2010) (recognizing an argument is deemed abandoned on appeal when it is merely conclusory and made without supporting authority). Further, this specific point is not listed in the Statement of Issues on Appeal. Therefore, the court need not address it. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

### B. *Unearned premium*

Employer argues Carrier did not properly cancel the policy because Carrier failed to timely return the unearned portion of the premium paid by Employer. We disagree.

On September 4, 2007, Carrier sent a notice of cancellation of the 2007–08 policy based on Employer's failure to pay the amounts billed by Carrier for both the 2006–07 policy and the 2007–08 policy. The notice advised Employer that the 2007–08 policy would be cancelled on October 10, 2007, if the additional premiums were not paid by then. Employer made partial payments on November 8, 2007, and November 15, 2007, but Employer did not pay the remaining amount due until November 26, 2007, well after the October 10th deadline. Carrier then reinstated the 2007–08 policy, effective November 27, 2007, with a lapse in coverage from October 10, 2007, through November 26, 2007.

Unrelated to premiums, the 2007–08 policy was cancelled a second time in April 2008, due to safety violations, and it was never reinstated. On June 9, 2008, Carrier paid Employer's lender a premium refund in the amount of $15,471 for the 2007–08 policy. Carrier did not charge premiums to Employer for the period of lapse, October 10, 2007, through November 26, 2007. Rather, Carrier adjusted the premium to account for the lapse in coverage in determining Employer's refund following the final audit. Further, Employer admits in its brief that Carrier returned any unearned premium after the final audit.

Although Carrier did not send the refund to Employer's lender until June 2008, there are no provisions in the policy requiring Carrier to return any unearned premium immediately upon cancellation of the policy. The policy's cancellation provision allows the final premium to be calculated "pro rata based on the time [the] policy was in force." 2007–08 Workers' Compensation and Employers' Liability Insurance Policy, Part V, Section E(1) ("Final Premium"). Therefore, the timing of any refund is tied to the calculation of the final premium. This calculation is not required to be performed until "*after* the policy ends*," so that Carrier may obtain accurate information on "the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by th[e] policy." 2007–08 Workers' Compensation and Employers' Liability Insurance Policy, Part V, Section E(1) ("Final Premium") (emphasis added).

██ Moreover, the calculation of the final premium necessarily involves an audit of the employer's records, and there is no provision requiring an audit to be conducted immediately upon cancellation of the policy. The policy section addressing audits states, in pertinent part: "We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends." 2007–08 Workers' Compensation and Employers' Liability Insurance Policy, Part V, Section G ("Audit"); Policy Information Page. Based on the foregoing, Carrier's issuance of a refund for the lapse in coverage after completing the audit of Employer's records in June 2008 did not violate any policy provisions and thus did not invalidate cancellation of the policy in October 2007. *Cf. Bowman v. State Roofing Co.*, 365 S.C. 112, 121–22, 616 S.E.2d 699, 704 (2005) (*"[W]here an insurance policy provides for the return of unearned premiums upon cancellation*, the tender of a refund is a condition precedent to an effective cancellation.") (emphasis added).[4]

### III. *Lapse in Coverage*

 Employer maintains the Appellate Panel erred in finding a lapse in Employer's coverage existed from October 10, 2007 through November 26, 2007. Employer argues the estimated premium paid through Johnson & Johnson in June 2007 should have been pro-rated to provide coverage for the ensuing nine months, which included the date of Claimant's accidental injury. We disagree.

Employer cites no authority for his argument that the estimated premium should have been pro-rated to provide coverage for the ensuing nine months.[5] Therefore, Employer

---

4. In its brief, Employer relies upon the following quote by our supreme court in the case of *Wilkes v. Carolina Life Ins. Co.*, 166 S.C. 475, 478, 165 S.E. 188, 189 (1932): "[T]he premiums having been paid, and retained by the defendant, and not refunded, or tendered back, the policy as a matter of law could not have been canceled by the notice of, or attempt at, cancellation." However, the court was merely quoting language from a party's motion to dismiss the complaint and this language was not adopted as a holding by the court. *Id.*

5. Employer quotes the following from the case of *Moore v. Standard Mut. Life Ass'n of S.C.*, 191 S.C. 196, 201, 4 S.E.2d 251, 254 (1939): "[T]he contract could not be lapsed during the time for which the

has abandoned this argument. *See State v. Garner,* 389 S.C. at 67, 697 S.E.2d at 618 (recognizing an argument is deemed abandoned on appeal when it is merely conclusory and made without supporting authority). Nonetheless, the opinion of the Supreme Court of North Carolina in *Klein v. Avemco Ins. Co.,* 289 N.C. 63, 220 S.E.2d 595, 597 (1975) is instructive on this point. In *Klein,* the court stated: " 'If the premium is not paid in the manner prescribed in the policy, the policy is forfeited. Partial payment, even when accepted as a partial payment, will not keep the policy alive even for such fractional part of the year as the part payment bears to the whole payment.' " 220 S.E.2d at 597 (quoting *Clifton v. Mut. Life Ins. Co. of N.Y.,* 168 N.C. 499, 84 S.E. 817, 818 (1915)).

Here, Employer's policy required the initial payment of an estimated premium for coverage throughout the 2007–08 policy year and an adjustment to the premium after a final audit at the end of the policy period. However, the policy also deferred to applicable law, which authorized a premium endorsement to the policy during the policy period. *See* Assigned Risk Supplement to the Basic Manual for Workers' Compensation and Employers' Liability Insurance § 2(D)(7)(b)(2)(a) (NCCI 2006) (stating that when a carrier discovers information indicating the need to more accurately reflect the exposure base or classification of the policyholder, the carrier must investigate and make a determination whether an endorsement to the policy is needed to accurately reflect the exposure base and/or classification(s) of the policyholder). This endorsement effectively restated the estimated premium, which was initially due at the beginning of the policy period. Therefore, Carrier was justified in requiring the additional premium to be paid within approximately sixty days to avoid cancellation of the policy.

Further, because Employer did not pay the full amount billed for the additional premium until November 26, 2007, Carrier properly reinstated the policy with a resulting lapse in coverage from October 10, 2007, through November 26, 2007. After Carrier determined it was necessary to issue a premium

---

premiums had been paid." However, *Moore* involved *monthly* premiums for a life insurance contract. Therefore, the opinion provides no guidance with respect to an assigned risk workers' compensation policy with an estimated *annual* premium.

endorsement to accurately reflect the information it obtained from the August 8, 2007 audit, the $24,463 paid by Employer up front took on the nature of a partial payment that would not "keep the policy alive even for such fractional part of the year as the part payment bore to the whole payment." *See Klein,* 220 S.E.2d at 597 (quoting *Clifton v. Mut. Life Ins. Co. of N.Y.,* 168 N.C. 499, 84 S.E. 817, 818 (1915)) (" 'If the premium is not paid in the manner prescribed in the policy, the policy is forfeited. Partial payment, even when accepted as a partial payment, will not keep the policy alive even for such fractional part of the year as the part payment bears to the whole payment.' ").

Based on the foregoing, the Appellate Panel properly concluded a lapse in Employer's coverage occurred from October 10, 2007, through November 26, 2007.

## CONCLUSION

Accordingly, the Appellate Panel's decision is **AFFIRMED.**

WILLIAMS, J., and CURETON, A.J., concur.