743 S.E.2d 864

**J. Gregory HEMBREE, Solicitor, Fifteenth Judicial Circuit, on behalf of the Horry County Police Department, Respondent,**

v.

**ONE THOUSAND EIGHT HUNDRED FORTY–SEVEN DOLLARS (1,847.00), U.S. CURRENCY; 1994 Monaco RV, SN: VIN: 1RF120611R1010972; and a Taurus 38 Special Pistol, SN: SF53109, Defendant Property, and Michael James Albin, Defendant,**

**Of whom, Michael James Albin is the Appellant.**

**Appellate Case No. 2012–211943.**

**No. 5142.**

Court of Appeals of South Carolina.

Heard April 11, 2013.

Decided June 12, 2013.

242

David James Canty, of Myrtle Beach, for Appellant.

David Pierce Caraker, Jr., of the Hyman Law Firm, of Florence, for Respondent.

WILLIAMS, J.

Michaela Albin, as personal representative for the estate of Michael J. Albin [1], appeals the circuit court's order (1) ordering the forfeiture of his motor home pursuant to section 44–53–520(a)(3) and (4) of the South Carolina Code (2002), (2) finding that his failure to appeal the denial of his summary judgment motion rendered it the "law of the case," and (3) dismissing his counterclaim for conversion. We affirm in part and reverse in part.

## FACTS

After receiving complaints of illegal gambling activities at Putters Lounge (Putters), a Horry County restaurant owned by Albin, agents for the South Carolina State Law Enforcement Division (SLED) initiated an investigation. Pursuant to the investigation, Agents Christina Gainey and Kathy Bass visited Putters several times. During each of their visits, Agents Gainey and Bass engaged in illegal gambling while wearing a hidden recording device. In addition, during their final visit, Agent Gainey asked Albin if she could purchase some marijuana from him. Albin indicated that she and Agent Bass could smoke marijuana with him in his motor home, which was parked directly behind Putters.

---

1. This action was originally brought against Michael Albin. Mr. Albin died after trial, and his estate is represented on appeal by Michaela Albin. For purposes of this opinion and because it is not necessary to our analysis, we will not differentiate between Michael Albin and Michaela Albin.

The following day, SLED agents executed a search warrant of Putters and the motor home. Upon SLED's request, officers from the Horry County Police Department (HCPD) assisted with the search. During the search and a subsequent inventory of the contents of the motor home, officers from the HCPD discovered five bags containing a total of 137 grams or approximately four ounces of marijuana in the motor home, a pistol, and $1,847 in currency. In addition, SLED agents recovered approximately $15,000 in currency and a laptop computer from the motor home and Putters.[2] HCPD agents also seized the motor home during the execution of the warrant.

The HCPD brought the instant action against Albin for forfeiture of the marijuana, pistol, motor home, and $1,847 in currency the HCPD seized during the execution of the search warrant. Prior to trial, Albin moved for summary judgment on the ground that forfeiture pursuant to section 44–53–520(a)(6) of the South Carolina Code (Supp.2012), which applies to conveyances, would not be proper because officers seized less than a pound of marijuana required by the section for the forfeiture of a motor vehicle. In response, the HCPD agreed to strike the portion of its complaint proceeding pursuant to subsection (6) of section 44–53–520(a). However, the HCPD argued that it could properly proceed pursuant to subsections (3), which addresses containers, and (4), which addresses property used to facilitate certain drug activities. In a pre-trial order, the Honorable Steven John agreed and denied Albin's motion for summary judgment, finding that the HCPD could proceed pursuant to subsections (3) and (4).

The Honorable Larry B. Hyman tried the case in a bench trial on July 28, 2011. Just before trial, Albin again argued that the portion of the case seeking forfeiture of the motor home should be dismissed. Specifically, Albin argued that the officers found less than a pound of marijuana in the motor home, which falls below the threshold for allowing the forfeiture of a motor vehicle pursuant to subsection (6) of section 44–53–520(a). Judge Hyman denied the motion, finding Judge John's prior order denying Albin's motion for summary judg-

---

2. In general, SLED seized items associated with illegal gambling, while the HCPD seized items associated with illegal drug use.

ment on the same grounds was the law of the case because Albin did not appeal that order.

In addition, the HCPD moved to dismiss Albin's counterclaims for the misappropriation of $15,000 seized by SLED during the raid, arguing that they were not properly before the court because SLED was not a party to the instant action. The circuit court agreed, dismissing the counterclaims without prejudice and noting that Albin was free to bring a separate action against SLED to recover currency seized by SLED.

At trial, Albin admitted giving marijuana to Agents Gainey and Bass in his motor home but denied ever selling marijuana to anyone. Albin also admitted purchasing and smoking marijuana in his motor home and claimed he smoked marijuana because his doctor recommended he do so to alleviate the effects of radiation treatments for cancer. Following the bench trial, the circuit court issued a final order (1) ordering the HCPD to return the pistol and $1,847 in currency to Albin and (2) finding Albin presented evidence reflecting legitimate sources of income and evidence that he purchased the pistol for protection after several burglaries and larcenies of his business. However, the court ordered forfeiture of the motor home. This appeal followed.

## LAW/ANALYSIS

### A. Forfeiture of the Motor Home

■ Albin argues the circuit court erred in ordering forfeiture of the motor home pursuant to subsections (3) and (4) of section 44–53–520(a). Specifically, Albin contends the court erred in allowing forfeiture of the motor home pursuant to these subsections despite the fact that the amount of marijuana found in the motor home was less than that required for the forfeiture of a motor vehicle pursuant to subsection (6) of section 44–53–520(a). Albin also argues the circuit court erred in finding Judge John's order denying his motion for summary judgment to be the law of the case. We agree.

Initially, we find the circuit court erred in finding Judge John's order denying his motion for summary judgment to be the law of the case. Albin could not have appealed this order because the denial of a motion for summary judgment is not appealable, even after final judgment. *Olson v. Faculty*

*House of Carolina, Inc.*, 354 S.C. 161, 167, 580 S.E.2d 440, 443–44 (2003). We also agree with Albin on the merits.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id.* at 499, 640 S.E.2d at 459. Further, "the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006). Accordingly, we "read the statute as a whole" and "should not concentrate on isolated phrases within the statute." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011). "In that vein, we must read the statute so that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous, for the General Assembly obviously intended the statute to have some efficacy, or the legislature would not have enacted it into law." *Id.* (alterations, citation, and internal quotation marks omitted).

██ Section 42–53–520(a) provides in pertinent part that the following are subject to forfeiture:

(1) all controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this article;

(2) all raw materials, products, and equipment of any kind which are used, or which have been positioned for use, in manufacturing, producing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this article;

(3) all property which is used, or which has been positioned for use, as a container for property described in items (1) or (2);

(4) All property, both real and personal, which in any manner is knowingly used to facilitate production, manufac-

turing, distribution, sale, importation, exportation, or trafficking in various controlled substances as defined in this article;

. . .

(6) all conveyances including, but not limited to, trailers, aircraft, motor vehicles, and watergoing vessels which are used or intended for use unlawfully to conceal, contain, or transport or facilitate the unlawful concealment, possession, containment, manufacture, or transportation of controlled substances and their compounds, except as otherwise provided, must be forfeited to the State. *No motor vehicle may be forfeited to the State under this item unless it is used, intended for use, or in any manner facilitates a violation of Section 44–53–370(a)* [3]*, involving at least one pound or more of marijuana.* . . .

S.C.Code Ann. § 44–53–520(a) (Supp.2012) (emphasis and footnote added). Based on the principles of statutory interpretation, we find the circuit court erred in ordering forfeiture of the motor home pursuant to subsections (3) and (4). A statute must be read as a whole and so that no phrase is rendered superfluous. *See CFRE, LLC,* 395 S.C. at 74, 716 S.E.2d at 881. Allowing a seizing agency to proceed pursuant to subsections (3) and (4) would render the one-pound weight limitation found in subsection (6) regarding marijuana meaningless and, therefore, superfluous, because motor vehicles could in every situation be forfeited pursuant to another subsection. For example, as in the instant case, it is likely that in many, if not all, circumstances, a motor vehicle will serve as a container for controlled substances, in which case the motor vehicle could be forfeited pursuant to subsection (3) as well as (6). This concern is further heightened by the fact that subsection (6) purports to apply to "all conveyances including . . . motor vehicles . . . which are used or intended for use unlawfully to . . . contain . . . controlled substances and their compounds. . . ." This language indicates the legislature did not

---

**3.** Section 44–53–370(a) (Supp.2012) of the South Carolina Code makes it illegal "to manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or controlled substance analogue."

intend for the State to pursue the forfeiture of a motor vehicle pursuant to subsection (3), which applies to containers generally, as well as subsection (6), which specifically applies to motor vehicles. Otherwise, the above language in subsection (6) is rendered redundant and unnecessary because the use of a motor vehicle as a container would already fall within subsection (3).

Further, it is difficult to ascertain why the legislature would preclude the forfeiture of a motor vehicle pursuant to subsection (6) but allow the forfeiture of the same motor vehicle pursuant to subsections (3) or (4). The fact that the legislature specifically addresses conveyances, including motor vehicles, in subsection (6) would appear to reflect the intent that all conveyances be forfeited pursuant to that subsection only. *See Bloate v. United States*, 559 U.S. 196, 130 S.Ct. 1345, 1354, 176 L.Ed.2d 54 (2010) ("[G]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment[.]" (alterations and internal quotation marks omitted)); *cf. Skinner v. Westinghouse Elec. Corp.*, 394 S.C. 428, 432–33, 716 S.E.2d 443, 445 (2011) (holding that a specific statute governing a certain issue controls over the more general language of another statute addressing the issue); *Avant v. Willowglen Academy*, 367 S.C. 315, 319, 626 S.E.2d 797, 799 (2006) (noting "the principle that more specific rules prevail over general ones"). Based on the above considerations and because it is undisputed that less than a pound of marijuana was found in the motor home, we find the circuit court erred in ordering forfeiture of the motor home pursuant to subsections (3) and (4). Accordingly, we reverse the circuit court's order of forfeiture of the motor home.

## B. Dismissal of Counterclaims

■ Albin argues the circuit court erred in dismissing his counterclaims against SLED. We disagree.

Albin filed counterclaims for the misappropriation of $15,000 allegedly seized by SLED during the raid. However, as noted by the circuit court, SLED was not a party to the instant action, and, accordingly, the circuit court dismissed Albin's counterclaims involving the seizure of the funds.

Despite this, Albin points to two statutes in support of his argument that the circuit court improperly dismissed his counterclaims. First, Albin cites section 44–53–520(h) of the South Carolina Code (2002), which states that "whenever the seizure of any property subject to seizure is accomplished as a result of a joint effort by more than one law enforcement agency, the law enforcement agency initiating the investigation is considered to be the agency making the seizure." We fail to see how this section supports Albin's argument that the circuit court erred in dismissing his counterclaims against SLED, which was not a party to the instant action. Further, SLED and the HCPD were investigating and searching for evidence of completely different criminal activity, i.e., the HCPD was investigating and searching for evidence of drug activity, and SLED was investigating and searching for evidence of illegal gambling activity. Accordingly, this argument is without merit.

In addition, Albin contends that pursuant to section 44–53–530 of the South Carolina Code (Supp.2012), a forfeiture action involving the funds seized by SLED would be brought by the same plaintiff, i.e., the circuit solicitor, as in the instant case. Accordingly, Albin states this supports a finding that he could properly bring counterclaims against SLED in the instant action. This argument is without merit because the circuit solicitor in the instant action was representing the HCPD, not SLED. The fact that the circuit solicitor would also be responsible for bringing a forfeiture action on behalf of SLED does not lead to the result that Albin could properly file counterclaims in the instant case involving any property seized in the circuit, regardless of the agency that seized the property. Accordingly, the circuit court did not err in dismissing Albin's counterclaims involving $15,000 seized by SLED, and we affirm the circuit court's dismissal of Albin's counterclaims.

## CONCLUSION

Based on the foregoing, we reverse the circuit court's order allowing forfeiture of the motor home and affirm the ruling dismissing Albin's counterclaims against SLED.

**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and KONDUROS, JJ., concur.